Williams, J.
 

 The sole inquiry relates to the validity of the deposit of the life insurance policy with the bank as collateral to secure the indebtedness of Howard T. Eaton, managing officer and sole stockholder of the corporation, The Eaton Builders Supply Company (now insolvent), which took out the insurance policy on the life of Eaton payable to itself, paid the premiums thereon and is named as beneficiary therein; the specific question is: Is the plaintiff as assignee for the benefit of the creditors of the insolvent corporation entitled to replevin the policy from the defendant bank?
 

 There is no doubt that the deposit of the policy with the bank without a written assignment was a sufficient transfer of the collateral as between the parties.
 
 Kechleg et ad., Exrs.,
 
 v.
 
 Coshocton Glass Co.,
 
 86 Ohio
 
 *582
 
 St., 213, 227, 99 N. E., 299. The same rule has been applied to certificates of stock and choses in action evidenced by writing.
 
 General Excavator Co.
 
 v.
 
 Judkins, Clerk,
 
 128 Ohio St., 160, 165, 190 N. E., 389;
 
 Shanklin
 
 v.
 
 Board of Commrs. of Madison County,
 
 21 Ohio St., 575;
 
 Bolles
 
 v.
 
 Toledo Trust Co., Exr.,
 
 132 Ohio St., 21, 4 N. E. (2d), 917. Consequently the bank can sustain the right to the collateral without a written assignment if the transaction was in other respects valid and binding.
 

 Plaintiff contends that Howard T. Eaton, as an officer of the corporation, could not secure his individual debt with corporate property and credit, and the act of depositing the insurance policy as collateral was
 
 ultra vires,
 
 illegal and in fraud of creditors.
 

 It is urged by the defendant that Section 8623-8, General Code (which follows' substantially Section 7 of the Uniform Corporation Act, 9th draft [See Gates Ohio Corporation Law (3 Ed.), Section 108, Paragraph XIV]), abolishes the doctrine of
 
 ultra vires
 
 in Ohio. However that may be, it is fundamental that the directors or other officers of a corporation, have no right, under mere guise of official capacity, to convert corporate funds or property to the use of themselves or others by means of a gift, a loan or otherwise ; so, ordinarily a policy by which an officer is insured by the corporation in its own behalf and at its own expense cannot be pledged by its directors or officers, acting by themselves, to secure the private indebtedness of one of its officers. Yet if the rights of creditors are not affected and all stockholders consent, such a pledge of the policy may be made in the absence of positive law forbidding it. The rational basis for this power to pledge the corporate collateral is the well recognized principle of law that, subject to the rights of creditors, a corporation may give away its property or pay out money from its treasury if the stockholders consent arid
 
 *583
 
 the act is not illegal. 1 Cook on Corporations (8 Ed.), 15, Section 3;
 
 Perkins
 
 v.
 
 Trinity Realty Co.,
 
 69 N. J. Eq., 723, 61 A., 167;
 
 Murphy
 
 v.
 
 Arkansas & L. Land & Improvement Co.,
 
 97 F., 723;
 
 Millsaps
 
 v.
 
 Merchants’ & Planters’ Bank of Greenville,
 
 71 Miss., 361, 13 So., 903;
 
 Swift
 
 v.
 
 Smith, Dixon & Co.,
 
 65 Md., 428, 5 A., 534;
 
 Stoney Brook Lumber Co.
 
 v.
 
 Blackman,
 
 286 Pa., 305, 133 A., 556. The consent of the stockholders, of itself, does not confer corporate power, but does make the pledge good as between the corporation and the creditor to whom the pledge is made. Of course, in a case in which a question of public policy is involved or the rights of the state or the public are concerned a different question would be presented; here, however, we are determining the rights of private parties only and the state does not interfere.
 

 When J. W. Eaton sold his stock to Howard T. Eaton the latter became the owner of all the stock. A few others were credited as stockholders on the books of the company for the purpose of qualifying them to be directors; but they paid no consideration for the stock allotted them and they never received any stock certificates. In the eye of the law they were not stockholders. Since, then, the Eatons assented to the deposit of the insurance policy as collateral, all stockholders assented.- In this view the knowledge of the bank and the participation of J. W. Eaton as one of its officers do not affect the relative rights of the participants. As between the parties thereto the pledge was valid and subsisting. However, the right of the corporation to place its property in pledge with assent of stockholders to secure the individual debt of an officer or third person is subject to this qualification — it could not, in doing so, prejudice the rights of its creditors; in other words, we get back in principle to the law of fraudulent conveyances.
 

 Was the pledge of the policy invalid for the reason that it was made in fraud of creditors ?
 

 
 *584
 
 In approaching the discussion there are certain elemental considerations to be borne in mind. With respect to a transfer of property claimed to be fraudulent, the assignee for the benefit of creditors may assert the same rights as the creditors of the assignor could, had there been no assignment
 
 (Blandy
 
 v.
 
 Benedict,
 
 42 Ohio St., 295, 299); and a corporation stands on the same footing as an individual in like position.
 
 Pfisterer
 
 v.
 
 The Toledo, Bowling Green & Southern Traction Co.,
 
 89 Ohio 172, 182, 106 N. E., 18.
 

 No claim is made that the transaction was vitiated by the presence of an intent to hinder, delay or defraud creditors, or by reason of being made in contemplation of insolvency, or by virtue of a design to prefer one or more creditors to the exclusion of others (Sections 8618 and 11104, General Code), and no evidence thereof appears in the record. It remains to be considered whether there was proof of constructiye fraud.
 

 It is well recognized that a voluntary transfer will not be set aside for merely constructive fraud at the instance of a subsequent creditor.
 
 Pfisterer
 
 v.
 
 Toledo, Bowling Green & Southern Traction Co., supra,
 
 at page 181;
 
 Evans
 
 v.
 
 Lewis,
 
 30 Ohio St., 11;
 
 Webb’s Admr.
 
 v.
 
 Roff,
 
 9 Ohio St., 430. However, in view of the evidence in the record to the effect that some of the creditors represented by the plaintiff assignee had open or running accounts at the time of the alleged fraudulent transfer and continuously since, the plaintiff assignee will be treated as representing existing and not subsequent creditors. What then is the rule as to the rights of existing creditors with respect to conveyances or transfers of property made without consideration?
 

 The rule is that a voluntary transfer or conveyance of property by a person who is solvent and reserves, clearly and beyond doubt, sufficient property to pay his existing indebtedness, is not constructively fraudu
 
 *585
 
 lent as to existing creditors.
 
 Crumbaugh
 
 v.
 
 Kugler,
 
 2 Ohio St., 373; see also 27 Corpus Juris, 548, Section 248.
 

 So far as The Eaton Builders Supply Company is concerned the transfer of the policy to the hank was voluntary, as the only consideration for the transfer was the $6,500 borrowed by Howard T. Eaton from the bank. Since the transfer was'voluntary it must be considered in the same light as a gift of corporate property. When the bank received the policy as collateral, The Eaton Builders Supply Company was absolutely solvent. It owed a few debts and some of them were running accounts and open accounts in the sense that business relations were continuous and new goods ordered before old bills were paid or payable; yet the evidence is undisputed that at the time of the alleged fraudulent transfer of the policy by the corporation it was discounting all its bills and had no indebtedness except current accounts which were paid promptly after the transfer. It is also undisputed that the value of assets was approximately $40,000. J. W. Eaton sold one-half interest in the stock of the company to his own son for $11,500. Perhaps the son was given a good bargain for kinship’s sake, but on the basis of this sale the value of the corporate assets over and above its liabilities would be $23,000. Three years before the transfer the partnership business of J. W. Eaton and Howard T. Eaton had been sold to The Eaton Builders Supply Company for $40,500, paid in stock of the company. During this three-year period the enterprise was prosperous. When due consideration is given to the nature, extent and success of the business, the ability of the company to meet its obligations promptly as they fell due is beyond question.
 

 The burden of proving solvency-at the time of transfer rested on the defendant.
 
 Oliver
 
 v.
 
 Moore,
 
 23 Ohio St., 473. Moreover, proof of solvency must be such as to show the reservation of sufficient property in accord
 
 *586
 
 anee with the rule laid down herein. It is true that uncontroverted evidence may in some cases require submission of the issues to the triers of facts, as for instance where the improbability of testimony presents a question of the credibility of a witness or witnesses.
 
 French
 
 v.
 
 Millard, 2
 
 Ohio St., 45. No such situation exists here. The evidence is undisputed that the property reserved was clearly and beyond doubt sufficient to satisfy all existing indebtedness; in fact the evidence thereof is such as to admit of no inference to the contrary. Therefore there was no proof whatever of constructive fraud.
 

 The corporation paid the premiums on the policy for many years after the transfer, but it cannot be said that that fact alters the situation. Payment of premiums was only a compliance with the terms of the contract of insurance and was in the interest of the beneficiary, the now insolvent company which on the death of the insured would have received the proceeds of the policy less the amount of the loan to the bank.
 

 As a matter of law the assignee for the benefit of creditors was not entitled to replevin the insurance policy, and the fund received by the bank as the cash surrender value may be applied upon the indebtedness secured thereby.
 

 The judgments of the courts below are reversed and final judgment is entered for appellant.
 

 Judgment reversed and final judgment for appellant.
 

 Weygandt, C. J., Matthias, Day, Zimmerman and Gorman, JJ., concur.