# CARDON v. HARPER et al.

No. 6709.  Decided August 24, 1944.  (151 P. 2d 99.)

See 37 C. J. S. Fraudulent Conveyances, Sec. 380; 6 A. L. R. 574; 24 Am. Jur. 260.

*Leon Fonnesbeck,* of Logan, for appellants.

*Thatcher & Young,* of Ogden, for respondent.

McDONOUGH, Justice.

This is an appeal from a decree adjudging the conveyance of a certain tract of land and the transfer of title to certain machinery and other personal property from husband to wife, under date of April 9, 1942, fraudulent as against creditors, particularly as against Glen R. Freeman. The latter recovered judgment of $1539 against Thomas R. Harper on November 6, 1942, for personal injuries sustained August 3, 1941. All attempts to collect the judgment were fruitless. Harper filed his petition in bankruptcy in May 1943.

The decree is assailed on each of the following grounds: (1) Lack of competent evidence to show that the deed and the bill of sale, dated April 9, 1942, from Harper to his wife, were fraudulent for lack of fair consideration. (2) Want of substantial proof that such conveyance and bill of sale rendered Thomas R. Harper insolvent on April 9, 1942, except for $2500 belonging to both of said defendants, which sum "was placed in the bank in the name of their daughter" to conceal the same. (3) That the finding that Louise C. Harper holds the land and machinery in question "in secret trust for" her husband, and that the same were conveyed and transferred with actual intent on their part to hinder, delay and defraud creditors, particularly said Glen R. Freeman, is contrary to the evidence. (4) That by reason of the undisputed proof, the court erred in refusing to allow defendants to amend their answer to show that the land in controversy does not exceed $1400 in value

and that it is exempt by law as part of the homestead rights of defendants.

The defendants are husband and wife. They have 7 minor children. In 1935 a tract of 240 acres, most of which was devoted to raising wheat, was deeded directly to defendant Louise C. Harper. Her title to this tract is not disputed. In 1936 an adjoining tract of 320 acres, in controversy here, was acquired in the name of Thomas R. Harper, the husband. These two tracts were farmed as one unit, and both husband and wife contributed their efforts to the farm, and the proceeds of the farm were used for family expenses. The sum of $5,000 which constituted a substantial part of the proceeds from the 1941 crop, was deposited in a joint savings account in the names of both defendants on September 25, 1941. Harper maintained a checking account into which he deposited various sums derived from the sale of the crops irrespective of where grown. His wife wrote checks on this checking account and the bank honored them.

In January 1942, about the time Freeman began to press Harper for settlement of the personal injury claim, a tractor was purchased with funds drawn from the checking account which stood in the name of Thomas R. Harper, but title was taken in the name of his wife. The court found that it was purchased for the use and benefit of Thomas R. Harper, with money belonging to him, and that Louise C. Harper held the same in trust for him. In view of the facts and circumstances, there is no reason for disturbing such finding; there is evidence to support it. The evidence also shows that after this particular transaction, other negotiations were conducted between Harper and Freeman, interrupted, and then renewed until March 1942, when counsel for Freeman sent a letter to Harper demanding a substantial settlement immediately. The evidence of Freeman tends to show that during the negotiations for settlement Harper was evasive and made no bona fide effort to reach an agreement, while Harper testified that he arrived at a settlement of $535 in good faith, only to learn that such

compromise figure was repudiated by assertion of additional demands by Freeman. Nothing was ever paid nor actually tendered on this purported compromise figure, either by Harper or on his behalf.

Freeman instituted action against both Harper and his wife on April 14, 1942. The action was contested. Apparently by reason of the testimony of Louise C. Harper which showed that Harper was in sole control of all farming operations, and her income from the farm where Freeman was injured, consisted of funds made available to her for family expenses, the court nonsuited Freeman as to defendant Louise C. Harper. There was a verdict and judgment of $1539 against Thomas R. Harper. A short time before the trial, there was recorded a deed from Thomas R. Harper to Louise C. Harper, his wife, conveying the 320 acres which had previously appeared of record in Harper's name. According to the testimony, this deed and a bill of sale both dated April 9, 1942, just 5 days before Freeman filed his personal injury suit, were executed within a couple of days after Louise C. Harper returned from confinement in a hospital. All of the arrangements for the preparation and execution of the deed and bill of sale were conducted by her husband with some assistance from the cashier of the bank.

The deed recites a consideration of "$1.00 and other valuable consideration," and the defendants contend that there was ample consideration to support the deed and bill of sale. If valid, these two instruments would operate to vest in the wife, title to the balance of the farm land and the major portion of the machinery and equipment used in the farming operations. There was no change in positions nor was there any change of possession, the conduct and control of the parties after these instruments were executed being substantially the same, as herein below indicated, as before their execution.

On April 9, 1942, the cashier of the bank issued two checks aggregating $3535 in the name of Louise C. Harper, which constituted the entire balance of the joint savings

account. One check was endorsed by her and $400 paid to the banker as the purchase price for a feed lot purchased from him, and title was taken in her name. The remaining $3135 was turned over to her husband on receipt of the deed and bill of sale. $2500 of this amount was shortly after its receipt placed by the husband in an account in the name of his minor daughter in another bank. He made withdrawals from this latter account by some previous arrangement with the bank. His explanation as to the reason for withdrawal by him of the entire balance thereof shortly before the trial, was that there was a crop failure in 1942 and that the money was needed to meet the needs of the family, and to take care of farm expenses.

It is not contended by respondent that if Louise C. Harper had owned separate funds or if her interest in jointly owned funds had been segregated, and no concealment of assets and no manipulation of funds and property had occurred, she could not have acquired good title to her husband's property by paying fair consideration. His position is that there was no fair consideration given, no actual change of position, no change of possession, and that there was an actual intention on the part of both grantor and grantee to hinder, delay and defraud creditors.

On the other hand it is pointed out on behalf of appellants that at least half of the money from farming operations could rightfully be claimed as Mrs. Harper's money; that she owned at least half of the funds on deposit in the joint savings account. Whether consideration be treated as a detriment to one or a benefit to the other, the fact is that after the manipulation of funds took place, and after the deed and bill of sale were executed, both the properties and the funds were used in substantially the same manner and for substantially the same purposes as they would have been had these questioned transactions never occurred, as far as grantor and grantee were concerned. The court was warranted in finding that there was a lack of fair consideration for these instruments, under the provisions of 33-1-1 to 4, U. C. A. 1943, since an actual fraudulent

intent would not be required when there was no fair value given and the effect of the transfer was to render the grantor insolvent.

The court also found that the conveyance and bill of sale were executed on the part of both grantor and grantee with actual intent to hinder, delay and defraud creditors, and that said transaction was fraudulent as to both present and future creditors. 33-1-7, U. C. A. 1943. There was sufficient evidence to warrant such finding, for the purported transfer of money from wife to husband consisted of taking funds which were partly owned by him, and giving him money which he arranged to have withdrawn by her, and which he could have withdrawn himself as far as the bank was concerned. In connection with this manipulation of funds, a substantial part of the money was put in the name of a minor child which was made subject to withdrawal by him and which was entirely so withdrawn shortly before the personal injury case went to trial. The testimony of Harper clearly indicates that his wife had access to his funds, whether at the bank or at home, so that the fact that the funds were kept at home for two months before being deposited in the name of their young daughter in a bank situated in another town, does not alter the picture. The evidence justifies the conclusion that the whole scheme was tainted with fraudulent intent, and that both defendants participated in the execution of the scheme to conceal assets and to give the appearance of a sale when there was no bona fide sale.

Counsel for appellants argues that there could not be any conveyance of the tract of land in controversy with an intent to hinder, delay or defraud creditors, because the property involved was exempt from execution and that creditors had no right to any part of it to satisfy their claims. It is urged that creditors had no legal right to levy on this tract of 320 acres because Thomas R. Harper as head of a family with 7 children is entitled to $4850 in real estate exempt from execution. It is true that an owner may convey exempt property to anyone including

his wife without having such conveyance overthrown by creditors, provided he makes the proper defense when such transaction is assailed by or on behalf of creditors. *Williams* v. *Peterson*, 86 Utah 526, 46 P. 2d 674.

However, the party who assails a conveyance on the ground that the same was executed to hinder, delay and defraud creditors of the grantor, is not required to prove that the property involved is unexempt property. He may not know and may be without the means of knowing whether particular property constitutes a homestead, for the power to select the property to which exemption from execution shall apply, is vested in the debtor or in the spouse of the debtor. 38-0-8, U. C. A. 1943. For this reason we have previously held that whether real estate is exempt property is a matter of defense to be pleaded and proved by the party claiming the benefit of the exemption. *Zuniga* v. *Evans*, 87 Utah 198, 48 P. 2d 513, 101 A. L. R. 532.

There can be no doubt that if defendants in this case had interposed properly and timely a defense that this particular land was claimed to be exempt from execution and that this real estate together with any other real estate standing in the name of Thomas R. Harper or otherwise owned by him, does not exceed in value his maximum homestead exemption, defendants would have stated a defense on which they would have been entitled to submit proof, and the court would have been required to make findings with respect thereto. *Williams* v. *Peterson*, supra.

Defendants, however, assumed until the very end of the trial that plaintiff had the burden of proving that this property is unexempt from execution. No plea that the land conveyed was exempt was made or attempted to be set up until after the trial was concluded. No request for leave to amend to assert such defense was made during the course of the trial, nor even at the close of the evidence. The trial ended November 17, 1943, when the case was submitted to the court for determination. The written application for leave to amend by setting up a homestead exemp-

tion claim was dated November 19, 1943, and was not received by the trial judge until November 23rd on which date he ordered judgment and decree in favor of plaintiff. The application to amend was denied.

Appellants insist not only that they should have been permitted to amend the answer since it was an amendment to conform to the proof, but go further and contend that there was no need for them to plead or prove such defense; because, they argue, plaintiff proved such defense for them. Of course, where the plaintiff either pleads or proves a defense which might be asserted by defendant, such pleading or proof or both usually operate to defeat the plaintiff's claim. However, plaintiff does not plead such defense so as to obviate either pleading or proof by defendants. Nor does the record reveal that the facts proved by plaintiff show that this property is homestead or exempt land.

Thomas R. Harper could, as shown above, claim a homestead exemption of $4,850. Plaintiff by his proof merely showed that in Harper's bankruptcy schedules, the home in Brigham City plus some grazing land, which constituted all of the land remaining of record in the name of Thomas R. Harper at the time he filed his petition to be adjudged a bankrupt, *was declared by him* to have an aggregate value of $3500, which is $1350 less than his statutory exemption. There was no proof introduced nor tendered by either side as to actual value of the properties listed in the bankruptcy schedules as exempt. No finding consequently was made as to value of the scheduled homestead properties. There was some evidence to the effect that the tract of land in controversy was purchased in 1936 for $1700 or $1800, and Harper testified that it was worth only $1400 at the time of trial because a portion of it was infested with wild morning glory. Though it were found that this tract was worth only $1400 at the time of trial, yet, absent proof in the lower court of the value of the property scheduled as exempt in the bankruptcy court, there could be no finding that the tract in controversy was exempt. The mere declaration of such valuation in the

schedules would not constitute proof of its value in this proceeding.

Apparently at the time of these questioned transactions the defendants did not regard this tract of land as exempt from execution or the deed would probably not have been given. We are of the opinion and so hold that plaintiff did not prove a defense of exemption from execution as to this tract of 320 acres. We are also of the opinion that the trial court did not abuse its discretion under the circumstances in refusing to allow the tardily proffered amendment to defendants' answer.

Complaint is made of the action of the trial court in decreeing that "the real and personal property hereinafter described became vested in the plaintiff Trustee in Bankruptcy as of the date of the filing of the petition in bankruptcy and that *such property and the whole thereof is hereby adjudged and decreed to be a portion of the bankrupt's estate to be administered by said trustee under the jurisdiction of the Federal Court sitting in bankruptcy.*" (Italics supplied.) Appellants' complaint is that the court thereby decreed the farm machinery to the trustee without taking into consideration the exemption statute 104-37-13 (3) U. C. A. 1943, which provides that farm machinery up to $300 in value is exempt, and permits that the whole of the machinery as well as the tract of land described, pursuant to such decree, to be administered by the trustee for the benefit of creditors. However, as pointed out previously, no plea nor proof of exemption was made before the trial court, and in view of such fact, whether the claimed exemptions may subsequently be asserted in the Bankruptcy Court, is a matter to be determined by such court. To the effect that the homestead exemption may be effectually asserted at any time before sale, despite failure of claimant to plead such defense in an action to set aside an alleged fraudulent conveyance thereof, see *Payson Exchange Savings Bank* v. *Tietjen et ux.*, 63 Utah 321, 225 P. 598; and *Utah Builders' Supply Co.* v. *Gardner,*

86 Utah 250, 39 P. 2d 327, 103 A. L. R. 928; rehearing denied 86 Utah 257, 42 P. 2d 989, 103 A. L. R. 932.

However, from another standpoint the language of the decree is too broad, doubtless because of inadvertence. The portion thereof vesting the described property in the trustee in bankruptcy and the italicized part quoted from the decree should be modified so as to vest in the trustee, for the purpose of being administered by him as a part of the bankrupt's estate, all right, title and interest of the bankrupt therein. The parties should be left in the same position as if the fraudulent transactions had not taken place.

Taken literally, the decree as it now stands in effect operates to divest the wife of the bankrupt, Louise C. Harper, of her contingent one-third interest in the land which she acquired by operation of law, ownership of which had nothing whatsoever to do with the fraud. The decree could properly operate only to rescind the transfer of whatever title the husband conveyed to his wife. Without relinquishment on her part of her interest, the trustee in bankruptcy, like the purchaser at execution sale, could acquire only the title and interest which the husband had the legal right to convey.

Except as to the family homestead, 101-1-1, U. C. A. 1943, gives a married man a right to devise away without the consent or relinquishment by the wife of her interest, two-thirds in value of each parcel of real estate, legal or equitable, which he owns. The other one-third in value vests in his wife free from his debts if she survives him and she has not theretofore relinquished her interest. 101-4-3, U. C. A. 1943. See In re Reynolds' Estate, 90 Utah 415, 62 P. 2d 270.

The purchaser at execution sale and the purchaser at bankruptcy sale of the right, title, equity and interest of the husband in bankruptcy can acquire no greater rights in the property than the husband acting without the written concurrence of the wife could convey. The decree setting aside Harper's deed to his wife as fraudulent should operate so

as to cancel the deed and leave the title as it was before such deed was executed.

The decree of the lower court is modified so that the operational effect thereof is to cancel said deed and bill of sale from Thomas R. Harper to his wife, without disturbing the contingent one-third interest of his wife in the described land. The decree as so modified is affirmed. Costs to respondent.

WOLFE, C. J., and LARSON, WADE AND TURNER, JJ., concur.