480 P.2d 731

**W. Smoot BRIMHALL, Commissioner of Financial Institutions of the State of Utah, Plaintiff and Respondent,**

**v.**

**D. Spencer GROW, Arta L. Grow, Steven L. Grow, First Fidelity Thrift & Loan Association, Western Land Corporation, Grow Investment and Mortgage Company, and Town and Country Real Estate Company, Defendants and Appellants.**

**No. 12103.**

Supreme Court of Utah.

Feb. 11, 1971.

B. Lloyd Poelman, of Strong, Poelman & Fox, Salt Lake City, for appellants.

Dallas H. Young, Jr., Provo, for respondent.

CALLISTER, Chief Justice.

Plaintiff, the Commissioner of Financial Institutions of the State of Utah, declared Utah Savings and Loan Association insolvent and took possession of its business and assets on December 5, 1966. Plaintiff in marshaling the assets initiated this action to have judicially declared void certain conveyances of real property by the defendant corporations and D. Spencer Grow and Arta L. Grow, as individuals, to Steven L. Grow, son of the individual defendants. The corporate conveyances were executed by the defendants Grow or other members of the family as officers of the defendant corporations. The dates of the various conveyances range from September 21, 1966, to January, 1968. All of the instruments recited ten dollars and other good and valuable consideration, except for one where there was no recital as to consideration.

The trial court found that the corporate defendants were the alter ego of D. Spencer Grow, that there was no fair or valuable consideration given by the grantee to the grantors, and that at the time of the conveyances the grantors were insolvent. The judgment of the court decreed that the conveyances were void and that the properties involved were subject to the payment of delinquent obligations. Defendants appeal.

There was certain evidence adduced at the trial which provides a background for understanding the issues in this action. Under the corporate structure of Utah Savings and Loan, to qualify as a corporate officer it was necessary to have 1,000 shares of permanent guarantee stock. D. Spencer Grow and certain companies that he controlled owned all of this stock ex-

cept for the qualifying shares which he would convey to one who was to become an officer and would take back when one ceased to be an officer. Certain corporations which were owned or controlled by Grow borrowed in excess of three million dollars from Utah Savings and Loan. During 1965–1966, Grow was advised by the Board of Directors of Utah Savings and Loan of the delinquent status of these loans. Utah Savings and Loan was obligated to its savers in the approximate amount of 24 million dollars, and, as of the date of the trial of the instant action, approximately 18 per cent had been returned to the savers by the plaintiff in the form of liquidating dividends. A separate civil action has been filed against Grows for tortious misconduct against Utah Savings and Loan; a copy of the complaint was entered in evidence. The claims against Grows aggregate millions of dollars.

The instant action concerns certain notes and mortgages which were executed by the defendant corporations during 1956 and 1957. At the time these instruments were executed, Arta Grow was director of Utah Savings and Loan. These instruments were all executed on behalf of the corporate defendants by D. Spencer Grow, President, and Arta L. Grow, Secretary. During 1967–68, plaintiff foreclosed on these mortgages; it is noteworthy that in each of these actions, the indebtedness at the time of foreclosure exceeded the amount of the original debt; as a result, there were many deficiency judgments. Executions issued against the corporate defendants were returned unsatisfied. Plaintiff brought the instant action because these corporate notes and mortgages were in default for nonpayment on the dates that the corporate defendants executed the deeds that are the subject matter of this action.

The trial court concluded as a matter of law that the loans made to the corporate defendants by Utah Savings and Loan became, upon their execution, the personal obligations of D. Spencer Grow and Arta L. Grow. The court took judicial notice of Sec. 7–7–5(2), U.C.A.1953, which provides:

> * * * The association shall not make any loans to an officer, director, or employee of such association except on the sole security of shares or certificate accounts owned by such officer, director, or employee, or except on the security of a first lien upon the home or combination of home and business property owned and occupied or to be occupied by said borrowing officer, director, or employee.

The court held that the Grows were liable individually for the deficiency judgments against the corporate defendants.[1]

1. See Henderson v. Security Mortgage and Finance Co., 273 N.C. 253, 160 S.E.2d 39, 44 (1968), wherein the court stated: " * * * However, when, as here, the

Plaintiff, in his complaint, alleged that the defendants executed the deeds for the purpose of hindering, delaying and defrauding plaintiff, a creditor, that defendants were greatly indebted to Utah Savings and Loan, that defendants did not have sufficient property to satisfy this indebtedness, and that the conveyances were wholly voluntary and made without valuable consideration. Plaintiff brought this action under Sec. 25–1–8, U.C.A.1953, which provides:

> Every conveyance * * * of any estate or interest in lands, * * * made with the intent to delay, hinder or defraud creditors, or other persons, of their lawful suits, damages, forfeitures, debts or demands, and every bond or other evidence of debt given, suits commenced, or decree or judgment suffered, with the like intent, as against the person hindered, delayed or defrauded shall be void.[2]

At the conclusion of plaintiff's case, defendants moved for summary judgment, which the trial court denied. On appeal defendants contend that the trial court erred in denying their motion because the plaintiff had failed to present a prima facie case. The defendants should have moved under Rule 41(b), U.R.C.P., however, the record reveals that the trial court treated the motion thereunder and took it under advisement until the close of all the evidence; whereupon, the motion was denied.

Defendants contend that plaintiff failed to present a prima facie case because he offered no proof of insolvency of the individual grantors and insufficient proof of the insolvency of the corporate grantors and no proof of an intent of the grantors to delay, hinder, or defraud creditors.

In Zuniga v. Evans,[3] this court observed that a consideration of $10 recited in a deed was not a fair consideration, and the expression reciting other good and valuable consideration meant nothing until explained by extrinsic evidence.

Plaintiff introduced the deeds in evidence, indicating merely nominal consid-

corporation is so operated that it is a mere instrumentality or alter ego of the sole or dominant shareholder and a shield for his activities in violation of the declared public policy or statute of the State, the corporate entity will be disregarded and the corporation and the shareholder treated as one and the same person, it being immaterial whether the sole or dominant shareholder is an individual or another corporation. * * * " Also see Stine v. Girola, 9 Utah 2d 22, 24; 337 P.2d 62 (1959).

2. This section is identical, except for punctuation with Comp.Laws 1888, Sec. 2838, and is substantially the same as 13 Eliz. c. 5. There may have been some confusion on the part of counsel because Chapter 1, Title 25, Fraudulent Conveyances, has two types of statutes. Some of them were passed in 1925, and were adaptations from the Uniform Fraudulent Conveyances Act; however, the prior statutes were also retained as part of the statutory scheme.

3. 87 Utah 198, 204, 48 P.2d 513 (1935).

eration, and further proved the existing indebtedness of defendants at the time of the execution of the conveyances. Under Sec. 25–1–8, U.C.A.1953, proof of these facts constituted a prima facie case.

* * * The creditor starts with the aid of a presumption flowing from the facts that (a) the transfer was a gift, with no consideration and (b) the donor was indebted at the time. Upon that presumption the creditor may stand until the grantee rebuts it with evidence tending to show that the donor's remaining property was sufficient to pay his debts. If the grantee fails to meet the issue by any proof, or if his evidence fails to satisfy the trier of fact, then in either case the fraudulent purpose of the grantor is established as a matter of law, regardless of his actual purpose, and the creditor is entitled to a decision. * * * [4]

In MacQueen v. Dollar Sav. Bank Co., [5] the court observed that it was fundamental that the directors or other officers of a corporation had no right, under mere guise of official capacity, to convert corporate funds or property to the use of themselves or others by means of a gift, loan, or otherwise. The court stated:

The rule is that a voluntary transfer or conveyance of property by a person who is solvent and reserves, clearly and beyond doubt, sufficient property to pay his existing indebtedness, is not constructively fraudulent as to existing creditors. * * *

* * * Since the transfer was voluntary it must be considered in the same light as a gift of corporate property. * * *

The burden of proving solvency at the time of transfer rested on defendant. [Citations omitted.] Moreover, proof of solvency must be such as to show the reservation of sufficient property in accordance with the rule laid down herein. * * * [6]

Defendants further contend that their evidence showed the conveyances were made for a fair consideration.

Since this is a case of equity, it is the duty of this court to review both the facts and the law. However, this court will reverse the judgment only if the evidence clearly preponderates against the findings of the trial court.[7]

The grantors commenced making the conveyances to the grantee shortly after his twenty-first birthday. David Grow, an officer of the defendant corporations and

4. Glenn, The Law of Fraudulent Conveyances, Sec. 271, pp. 363–364.

5. 133 Ohio St. 579, 15 N.E.2d 529, 117 A.L.R. 1258, 1262, 1263 (1938).

6. Also see 37 Am.Jur.2d, Fraudulent Conveyances, Sec. 218, p. 875.

7. Givan v. Lambeth, 10 Utah 2d 287, 288–289, 351 P.2d 959 (1960).

brother of the grantee, testified that the corporations received no money or property from the grantee but that he rendered services. As an example of the services rendered, the witness testified that the grantee took phone complaints from neighbors concerning one of the vacant lots conveyed to the grantee. Subsequent to the conveyances, the grantee effected certain repairs which improved the property and its income. The consideration for the conveyances of the Grows, individually, was love and affection and fulfillment of a family agreement that the property would constitute a family inheritance.

A review of the evidence clearly does not preponderate against the finding of the trial court that the grantee gave no fair or valuable consideration.

* * * In the case at bar the instrument in question was a voluntary conveyance, having been made without a valuable consideration. The complainant was a judgment creditor. As to him, the conveyance is void, because his claim is paramount to that of the debtor's sons. That a person must be just before he is generous is an invariable rule of law. The claims, under a voluntary conveyance, of those who are bound by the ties of natural affection and duty, must yield to the superior rights of creditors. A

settlement of property by a father upon his child, when the father is insolvent or largely indebted, and when he has not sufficient property remaining to satisfy his debts cannot be sustained. * * *[8]

■ Defendants further assert that the trial court erred in setting aside the conveyances of the Grows, individually, to the grantee. Defendants urge that plaintiff's claim against the Grows, individually, is a tort claim which has not been reduced to judgment, and, therefore, their liability has not been established. The findings of fact and conclusions of law do not support defendants' assertions. Although there was evidence of the plaintiff's separate civil action against the Grows, the trial court set aside their conveyances on the ground of their personal liability on the corporate notes and mortgages and subsequent deficiency judgments. Defendants further contend that the trial court granted relief in excess of the prayer in plaintiff's complaint, namely, that the deeds be set aside as void and fraudulent. The trial court ordered that the property be sold to satisfy the deficiency judgments that had been rendered against the corporate defendants. Defendants' argument is without merit. This entire action was predicated on the fact that the grantors had placed property beyond the levy of their judgment creditor.

8. Ogden State Bank v. Barker, 12 Utah 13, 25, 40 P. 765, 768 (1895); this case was determined under Comp.Laws Utah 1888, Sec. 2838, which except for minor changes in punctuation is identical with Sec. 25-1-8, U.C.S.1953, see note 2 supra.

The judgment by the court declared the conveyances void, solely for the purpose that plaintiff might satisfy the deficiency judgments.

 Finally, defendants assert that this matter should be referred to the trial court ·for a determination of the grantee's equitable interest in the properties. They claim that the grantee's expenditures for repairing and preserving the property subsequent to the conveyances vested in him an equitable interest.

The following excerpt from Glenn, The Law of Fraudulent Conveyances, Sec. 249, p. 335, resolves this issue.

Thus it is apparent that, so far as maintenance expenses are concerned, the question is academic unless the creditor comes, either by way of an equitable suit to avoid the transfer and for an accounting as incidental to the principal measure of relief, or by way of a quasi contractual action for the income, after a judgment at law sustaining a levy upon the property. If the creditor merely levies on the property and does not follow with a suit for income, the grantee keeps what he has collected; and by the same token he would have no affirmative action against the creditor for the cost of upkeep. It is only when the creditor demands income as well as capital that the grantee can suggest the question of maintenance. The issue, therefore, is essentially affirmative on the part of the creditor. He demands gross income. The grantee's position is one of recoupment, of offset, so far as maintenance charges are concerned. * * *[9]

The judgment of the trial court is affirmed. Costs are awarded to plaintiff.

TUCKETT, HENRIOD, ELLETT, and CROCKETT, JJ., concur.

accounting by the grantee of the rents and profits, or has not been allowed an accounting, the grantee has been denied a recovery for payments he has made for taxes, improvements, etc."

---

9. Also see 60 A.L.R.2d 593, 626—Anno: Fraudulent Conveyances—Rents—Profits: "In some cases in which a creditor has sought to have a conveyance set aside as fraudulent but has not asked for an