In re William N. GROOMS, Debtor.

Roger G. SEGAL, as trustee, in bankruptcy for the estate of William N. Grooms, Debtor, Plaintiff,

v.

William N. GROOMS, Roger N. Grooms and Kathryn Grooms, Defendants.

Bankruptcy No. 79–01485.
Civ. No. 80–0234.

United States Bankruptcy Court,
D. Utah.

Aug. 24, 1981.

Brent D. Young, Ivie & Young, Provo, Utah, for trustee.

Dennis L. Wright, Richman & Wright, Salt Lake City, Utah, for defendants.

MEMORANDUM OPINION

RALPH R. MABEY, Bankruptcy Judge.

## INTRODUCTION

This case raises burden of proof problems under the Utah Uniform Fraudulent Conveyance Act. The factual and procedural background is as follows.

On May 31, 1978, debtor gave a note for $21,005 to the Central Bank and Trust Company. This was a renewal of a note which had matured. It was secured by assets owned by a corporation which debtor controlled. On June 7, 1978, debtor conveyed his home, which he owned free and clear of any encumbrance, to his son and daughter-in-law, Roger and Kathryn Grooms. The consideration for this transfer was filial affection and a promise to support debtor. Roger intended to mortgage the home, invest the proceeds, and use income derived from this investment to fulfill his contract with debtor. Debtor continued to live, rent-free, in the home. In December, 1979, debtor filed a petition under Chapter 7 of the Code. The trustee commenced this suit under the auspices of 11 U.S.C. Section 544(b) which empowers him to avoid transfers of property from the debtor to third persons which are avoidable "under applicable law." The applicable law invoked in this case is the Utah Uniform Fraudulent Conveyance Act, specifically 3 Utah Code Ann., Section 25–1–4 (1976) which provides:

> Every conveyance made, and every obligation incurred, by a person who is, or will be thereby rendered, insolvent is fraudulent as to creditors, without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration.

■ Litigation under Section 25–1–4 turns on three issues: (1) whether plaintiff is a creditor (or stands in the shoes of a creditor) of the debtor; (2) whether debtor is insolvent when the transfer is made; and (3) whether the transfer is made for "fair consideration." "Fair consideration" is defined to mean "fair equivalent" and "good faith." *Meyer v. General American*

*Corporation*, 569 P.2d 1094, 1095 (Utah 1977).[1]

Only the second and third issues were disputed at trial.[2] The trustee maintained that love and affection, as a matter of law, are not "fair consideration" and that the only triable issue of fact was insolvency. He assumed that it was defendants' burden to show that debtor was solvent at the time of the transfer. Burden of proof was not preserved as an issue in the pretrial order. Nor was it argued in trial briefs. When it was raised via jury instructions[3], the trustee cited two cases to support his view, *Ogden State Bank v. Barker*, 12 Utah 13, 40 P. 765 (1895) and *Brimhall v. Grow*, 25 Utah 2d 298, 480 P.2d 731 (1971). The Court was persuaded, however, that *Barker* and *Brimhall* were not controlling. After reviewing other authorities, on short notice, it drafted an instruction placing the burden of proof on the trustee. The trustee objected in conference to this instruction. He did not object, however, after the instructions were read to the jury and before it retired.

■ The issues of insolvency and fair consideration were submitted by special verdict to a jury[4] which answered in favor of defendants. The special verdict is dated May 5, 1981. Judgment was entered May 14. The trustee moved for a new trial on May 13 pursuant to Rule 59(b), Fed.R. Civ.P., made applicable herein by Rule 923,

Fed.R.Bankr.P.[5] He argues that the court erred in allocating the burden of proof. The motion is denied for the following procedural and substantive reasons.

## PROCEDURAL REASONS

■ The giving of an erroneous instruction may be cause for a new trial. But the error must be brought to the court's attention in time to prevent the harm allegedly done. Otherwise judicial economy is not served; litigation becomes a merry-go-round with parties allowed to experiment with new theories, arguments, and authorities after old ones have proved unavailing. Thus "it is permissible to ground a motion for a new trial on an allegation of legal error that is supported by a controlling decision not called to the court's attention, *and which is unknown to the moving party due to mistake, inadvertence or excusable neglect.*" 6A Moore's Federal Practice ¶ 59.08[2] at 59–107 (2d ed. 1979) (emphasis supplied).

■ These principles have two applications in this case. First, whatever the merits of the trustee's argument on burden of proof, he must enlighten the court on his position and its basis at trial. He cannot be casual or partial in his preparation, assuming that the court will accept his argument, and having lost the day, cry foul because

---

1. Section 25–1–4 must be distinguished from 3 Utah Code Ann., Section 25–1–7 which interdicts "every conveyance made, and every obligation incurred, with actual interest, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors." Section 25–1–4 deals with transfers which are constructively fraudulent; "subjective or actual intent to defraud" is irrelevant. *Meyer v. General American Corporation, supra* at 1096. Section 25–1–7, however, is concerned with "actual intent, as distinguished from intent presumed in law." Insolvency and fair consideration are not issues, only the motive to "hinder, delay or defraud" creditors. The two statutes create distinct fraudulent conveyance claims.

2. Problems associated with creditor status were raised by motion to dismiss in the early stages of the case. This motion was denied by order dated October 17, 1980. The issue did not resurface at trial.

3. The trustee, consistent with his assumptions in the case, submitted an instruction on burden of proof on the issue of insolvency but not fair consideration. Defendants did not submit an instruction on burden of proof.

4. The trustee did not object to defendants' request for trial by jury and therefore this issue was not considered by the court. Whether there is a right to trial by jury in state fraudulent conveyance actions may be questionable. *See, e. g., Zimmerman v. Mozer, et al.*, 10 B.R. 1002, 7 B.C.D. 849 (Bkrtcy.D.Colo.1981).

5. Rule 59(b) requires a motion for new trial to be served "not later than 10 days after the entry of the judgment." The language of the rule is therefore "broad enough to permit the motion to be made both before and after entry of the judgment." 6A Moore's Federal Practice ¶ 59.09[1] at 59–196 (2d ed. 1979).

authorities he failed to unearth suggest error. Second, the trustee must make his objections in a timely manner which permits the court to correct any error.

■ *First.* The court has surveyed the Utah cases construing Section 25–1–4 (discussed below) and has concluded that the burden of proof was properly placed on the trustee. An error in this regard, however, will not aid the trustee. The authorities which he relied upon are, in any event, inapposite. He had opportunity to develop other authorities but did not. This case had been pending for nearly one year. This is time enough to anticipate, research, and argue a point of law. The trustee's failure adequately to do so cannot be attributed to "mistake, inadvertence, or excusable neglect."

■ *Second.* The rule in this circuit is that parties must object to instructions not only in conference but also at the bench after they have been read but before the jury retires. *See, e. g., Smith v. Greyhound Lines, Inc.,* 382 F.2d 190, 191 (10th Cir. 1967); *Dunn v. St. Louis-San Francisco Railway Company,* 370 F.2d 681, 683–684 (10th Cir. 1966). The rationale for the rule is that, even though the objection is voiced in conference, the need to resist error cannot be gauged until the charge to the jury is heard as given rather than as proposed, and as a whole rather than in part. Objection at that time gives the court " 'an opportunity upon second thought, and before it is too late,' " *id.* at 684, to cure any defects. The trustee did not make his objection in conformance with this rule. This omission constitutes a waiver of his objection.

## SUBSTANTIVE REASONS

Section 67(d)(2)(a) of the Bankruptcy Act, former 11 U.S.C. Section 107(d)(2)(a), which in substance is identical with Section 25–1–4, places the burden of proof on the trustee. 4 Collier on Bankruptcy ¶ 67.43 at 620–621 (14th ed. 1978). Collier notes, however, that while this rule, of necessity, is uniform under the Bankruptcy Act, it is otherwise under state laws which have evoked a smorgasbord of views. *Id.* at 624–626.

Utah alone has spawned three lines of cases. The first implies that the burden of proof is on the trustee. The second places the burden of proof on the trustee. The third places the burden of proof on defendants. These decisions will be discussed. Then the reasons for following the first and second group of cases will be stated.

The first cluster of opinions, while not expressly dealing with the problem, implies that the burden of proof is on the trustee. For example, in *Cardon v. Harper,* 106 Utah 560, 151 P.2d 99 (1944) a lower court found that a conveyance from husband to wife was fraudulent under Utah Code Ann., Section 33–1–4 (1943), the predecessor to Section 25–1–4. This was assailed for "lack of competent evidence to show that a transfer was made without fair consideration and that it rendered defendant insolvent. *Id.* 151 P.2d at 100. This assignment of error is incongruous if defendants shouldered the burden of proving fair consideration and solvency. Moreover, defendants argued that the property was exempt and therefore could not be the subject of a fraudulent transfer. This argument was disallowed since it had not been raised and proved as an affirmative defense, suggesting, by negative inference, that the trustee carried the burden of proof on other matters. *Id.* 151 P.2d at 102–103.

In *Gustin v. Matthews,* 25 Utah 168, 70 P. 402 (1902) a pre-Uniform Act case dealing with a "constructively fraudulent" transfer akin to those forbidden under Section 25–1–4, the trustee had the burden of going forward, if not the burden of proof, because after he rested, defendant moved for a nonsuit. The transfer, from husband to wife, was declared fraudulent only when this motion was denied and defendant failed to put on evidence.

*Smith v. Edwards,* 81 Utah 244, 17 P.2d 264 (1932) also involved pre-Uniform Act law. *Id.* 17 P.2d at 268. The case was tried and appealed on two theories: that the conveyance was constructively fraudulent and that debtor intended to "hinder, delay,

# 380

or defraud" creditors. The transfer was from father to sons. On the theory of constructive fraud the court ruled that "there was no fraud shown ... to justify the setting aside of the conveyances. There was no proof of insolvency at the time the conveyances were made or for about three years thereafter." *Id.* 17 P.2d at 272. This ruling would be anomalous unless the trustee had the burden of proof. Although creditors alleged the transfer was "voluntary," *i. e.*, without consideration, *id.* 17 P.2d at 267, the court found a "valuable consideration, if not an adequate one." *Id.* 17 P.2d at 272. What difference, if any, this finding may have made in allocating the burden of proof is not explained.

*Williams v. Peterson*, 86 Utah 526, 46 P.2d 674 (1935), involved a transfer from husband to wife. The court, as in *Cardon*, required defendant to raise and prove a claim that the property was exempt as an affirmative defense. However, it noted that "if the plaintiff claimed that the interest of [the husband] in the property exceeded the homestead exemption in value, the burden was upon plaintiff to prove that fact, if, indeed that fact has any importance whatever in the case." *Id.* 46 P.2d at 681. This dictum strengthens the negative inference made in *Cardon* that the trustee has the burden of proof on issues which are not raised defensively.

A subgroup within the first line of cases indicates more directly that the burden of proof is on the trustee. *Givan v. Lambeth*, 10 Utah 2d 287, 351 P.2d 959 (1960) is the leading opinion. The case was brought under Section 25–1–4 [6] by creditors who had sold a corporation to debtor, with the purchase price secured by stock of the corporation. It involved a transfer of realty from father to children. The consideration for the transfer was "love and affection" as well as prior service in the family business. *Id.* 351 P.2d at 963. The latter, of course, being past consideration, would be no consideration. Additionally, several so-called "badges of fraud" were evident. The father, for example, after delivery of the deeds to his children, continued to exercise control over the property. He twice mortgaged it in his name, and reported ownership on his tax returns. Faced with these indicia of fraud, the court noted:

... We still take for granted that transactions between close relatives under circumstances of this kind are to be closely scrutinized when attacked by creditors of the grantor. However, the mere fact that the transaction is among close relatives does not necessarily mean that it is invalid, *but the true facts are subject to proof.* *Id.* 351 P.2d at 962 (emphasis supplied).

The court upheld the findings of the lower court (which had been assisted by an advisory jury) including one on the issue of solvency that the corporation which creditors sold to debtor "had a net worth of approximately $43,000, and there was insufficient evidence for the court to determine whether the assets had increased or decreased" when the transfer was perfected. *Id.* 351 P.2d at 964. The language quoted above suggest that creditors may not rest on any presumption that a conveyance between relatives is fraudulent but that "the true facts are subject to proof." This suggestion is reinforced by the finding quoted above where the risk of nonpersuasion as to the corporations and hence debtor's continued solvency rested on creditors.[7]

Two cases have been decided in the wake of *Givan, Road Runner Inn, Inc. v. Merrill,*

**6.** Section 25–1–7 is mentioned but the opinion's emphasis on insolvency and fair consideration indicate that Section 25–1–4 was the primary battleground.

**7.** In an aside, appropos the circumstances of this case, the *Givan* court also noted: "A significant fact to keep in mind is that, in addition to receiving a very substantial portion of the purchase price of this business, the Givans secured themselves by retaining title to the stock and were able to forfeit Lambeth's interest. After this was done it seems quite understandable that the attempt to further pursue the assets of the Lambeth family and impress a lien upon their home for the balance of the purchase price did not particularly appeal to the conscience of a fair-minded jury, nor of a court of equity." *Id.* 351 P.2d at 963.

605 P.2d 776 (Utah 1980) and *Ned J. Bowman Company v. White*, 13 Utah 2d 173, 369 P.2d 962 (1962). Both were brought under Section 25–1–4. Both involve transfers between close relatives, in *Merrill*, from husband to wife, and in *White*, from son to father. Both note that such transfers, while "subject to rigid scrutiny," are not necessarily fraudulent. Indeed, the *Merrill* court opines "that where one who is insolvent (or nearly so) and unable to pay his creditors makes a conveyance to a member of his family the conveyance should be carefully scrutinized. Nevertheless, in the absence of any connivance of [sic] deception in doing so, the fact that a person is in financial straits, or even broke, should not totally disable him from dealing in a fair and forthright manner with his other essential responsibilities, particularly with his obligations to support his family." *Id.* at 777.[8] The "rigid scrutiny" standard does not appear to be a burden shifting device. If so, it would have been easy, and the court has had opportunity on several occasions, to describe it as such. On the contrary, it originated in the *Givan* opinion, quoted above, and in that context, the burden of proof was placed on the trustee.

The second line of cases places the burden of proof on the trustee. In *Barker v. Dunham*, 9 Utah 2d 244, 342 P.2d 867 (1959), although unclear, there are indications that Section 25–1–4 was the statute at issue. The transfer, from husband to wife, rendered debtor insolvent. The question was whether the transfer was made for "fair consideration." The opinion states: "The [trustee] has an additional burden in this case to prove a fraudulent conveyance, which requires clear and convincing evidence." *Id.* 342 P.2d at 868.

In *Meyer v. General American Corporation, supra*, two transfers, both challenged under Section 25–1–4, were involved. The first was between corporations with common principals.[9] The second was between one of these corporations and a third party. Without distinguishing between these transactions, the court noted that the creditor "was obligated to show" or prove three elements in her case, *viz.*, her status as a creditor, insolvency, and want of fair consideration. *Id.* at 1096. Unlike *Dunham*, however, no quantum of proof is mentioned.

The third line of cases suggests that the burden of proof is on defendants. This group of decisions had its genesis in *Paxton v. Paxton*, 80 Utah 540, 15 P.2d 1051 (1932), which involved transfers from debtor to his brother and brother-in-law. Additionally, there were "badges of fraud." The pertinent language is as follows:

> It is quite generally held that a transfer or mortgage of property between near relatives which is calculated to prevent a creditor from realizing on his claim against one of such relatives is subject to rigid scrutiny [citation omitted]. Under the rule, a transfer or mortgage of property made to a near relative in consideration of past due indebtedness will be sustained if attacked in a creditor's suit when, and only when, it is shown the debt is genuine, that the purpose of the grantee or mortgagee is honest, and that he acted in good faith in obtaining his title or lien. The burden, in such case, is cast upon the grantee or mortgagee to show the good faith of the transaction by clear and satisfactory evidence. *Id.* 15 P.2d at 1056.

*Paxton* was followed in *Zuniga v. Evans*, 87 Utah 198, 48 P.2d 513 (1935); *Lund v.*

---

**8.** The transfer in *Merrill* was made pursuant to a court approved property settlement in a divorce. This may explain the sympathetic tone of the language quoted above.

**9.** Transfers between corporations controlled by the same principals are at least as suspect as transfers between relatives. Indeed, relatives often use corporations as a vehicle to defraud. This was the case in *Brimhall v. Grow, supra*, relied upon by the trustee. The transfer there was between a corporation dominated by a husband and wife and their sons. Other Utah cases involve similar facts. *See, e. g., First Security Bank v. Vrontikis Bros., Inc.*, 26 Utah 2d 422, 490 P.2d 1301 (1971) (transfer from debtor to entity controlled by debtor); *Utah Assets Corporation v. Dooley Bros. Ass'n*, 92 Utah 577, 70 P.2d 738 (1937) (transfer from debtor, a family owned corporation, to family members).

*Howell*, 92 Utah 232, 67 P.2d 215 (1937); and *Boccalero v. Bee*, 102 Utah 12, 126 P.2d 1063 (1942). *Paxton* and its progeny, however, carefully analyzed, are distinguishable from this case.

First, the rule in *Paxton* was not applied to a statute like Section 25-1-4. Language from the opinion reflects this. The court speaks of a transfer "calculated to prevent a creditor from realizing his claim," and a showing "that the purpose of the grantee or mortgagee is honest." The court further notes that "there are a number of facts disclosed by the evidence which tend to show that the mortgage was executed for the purpose of preventing the [creditors] from collecting the amount owing to them." *Id.* This suggests that the statute at issue involved actual intent as distinct from intent presumed in law.

Second, assuming the rule did apply to Section 25-1-4, it would come into play upon a coincidence of several factors, only one of which is a transfer between relatives. Thus, in *Paxton*, a writ of execution had been issued and returned unsatisfied, a prima facie showing of insolvency, *id.* 15 P.2d at 1053; consideration for the transfer was past due indebtedness, the genuiness of which was suspect, *id.* 15 P.2d at 1056; other badges of fraud existed. *Id.*

Third, the rule places the burden of proof on defendants "to show the good faith of the transaction." *Id.* As noted above, this probably refers to the subjective intent of the parties. If it applies to Section 25-1-4, however, good faith is only one component of the statute. This leaves the burden of proof to be allocated on the issues of insolvency and fair equivalence.

Fourth, confusion over the statement and application of the rule may have been clarified in *Zuniga v. Evans, supra.* There debtor transferred property to his daughters. This transfer was challenged by a creditor. The creditor was nonsuited, however, at the close of her evidence "because the trial court was of the opinion she had not made out a prima facie case." *Id.* 48 P.2d at 515. This was error, according to the court, because "it was necessary for defendants to go forward with their proof to show, as they alleged, that the daughters paid their father a fair consideration for the property, or suffer judgment to go in favor of plaintiff," citing *Paxton. Id.* Thus, the rule, as qualified in *Zuniga*, is a rule of procedure not evidence. In effect, it places the risk of going forward rather than the risk of persuasion on the defendants.

Fifth, the rule has been superseded by later decisions discussed above. *Givan*, for example, cites the close scrutiny language of *Paxton, id.* 351 P.2d at 962 n.4, but does not mention its burden of proof or even its burden of going forward requirement. On the contrary, as noted above, there is a definite suggestion that the burden of proof is on the trustee. Other decisions have likewise shown indifference to this aspect of *Paxton*, ignoring the substance but citing the shadow of the rule. *See, e. g., Ned J. Bowman Company v. White, supra* 369 P.2d at 963 n.6. Moreover, *Paxton* cannot be reconciled with the burden of proof standards of *Dunham* and *Meyer*.

The two cases cited by the trustee, of course, deserve separate mention. *Ogden State Bank v. Barker, supra* is a pre-Uniform Act case, although the Act did not alter its holding. *See Zuniga v. Evans, supra* 48 P.2d at 516–517. The transfer was from debtors to their sons. *Barker* is distinguishable on the same grounds as *Paxton*. It is concerned, for example, with conveyances made to hinder, delay, or defraud creditors not with conveyances constructively fraudulent. Indeed, it cites the statute to this effect and holds that an allegation of insolvency is not necessary to state a claim thereunder. *Id.* 40 P. at 767–768. Later decisions have noted this fact. *See Brimhall v. Grow, supra* 480 P.2d at 735 n.8. *Barker* mentions conveyances which are constructively fraudulent, *id.* 40 P. at 767, but in light of the foregoing, this must be considered dictum. If not, *Barker* is nevertheless distinguishable because the return of a writ of execution made out a prima facie case for insolvency, *id.* 40 P. at 768, and the consideration, under an estoppel by deed theory, was treated as nil. *Id.*

40 P. at 766–767. In this case, there was no prima facie showing of insolvency, and the consideration was more than nil. It included a promise of support. True, *Barker* does state that love and affection and services to be performed by minor children are not consideration. *Id.* 40 P. at 768. This statement, however, is inconclusive. First, it is dictum; the estoppel by deed ruling renders it unnecessary. Second, it refers to services to be performed by minor children. Disallowance of these services as consideration is not because of the conveyance but because "labor performed by children, *during their minority,* for their parents, will not entitle such children to compensation, so as to establish the relation of debtor and creditor between them." *Id.* 40 P. at 767 (emphasis supplied). Later cases such as *Givan,* demonstrate that even past services by adult children do not come within this rule. In this case, Roger is an adult child who gave a promise of future support. Finally, *Barker,* as interpreted by the trustee, cannot be squared with later Utah decisions.

*Brimhall v. Grow, supra,* is likewise distinguishable. There is confusion whether the claim was for hindering, delaying, and defrauding creditors or for constructive fraud. *Id.* 480 P.2d at 733. If Section 25–1–4 was at issue, a prima facie showing of insolvency was made. *Id.* 480 P.2d at 732. No consideration supported the transfer. *Id.* 480 P.2d at 734. The language on burden of proof speaks in terms of gifts made by corporate fiduciaries because the transfers were between corporations [10] controlled by parents to sons. This is distinct from the ordinary parent-child transfer where a fiduciary relationship may not obtain. *See, e. g., Bradbury v. Rasmussen,* 16 Utah 2d 378, 401 P.2d 710, 713 (1965). *Brimhall, id.* 480 P.2d at 733, relies upon *Zuniga,* suggesting that the burden involved may have been to go forward rather than to prove a fraud. Finally, *Brimhall* also cannot be harmonized with later Utah cases.

It is beyond the scope of this opinion to state a definitive rule on burden of proof under the Utah fraudulent conveyance statutes. As the discussion above suggests, the law in this regard is uncertain. It is complicated by several factors, such as the possibility of differing burdens depending upon the statute a trustee may invoke. Although, in Utah, it appears that a lesser burden or a shifting of burdens may occur under the actual rather than the constructive fraud provision, this is a result at odds with traditional views. Similarly, burdens may shift under either provision upon a threshold showing by the trustee. Although it is unclear what that showing should entail, it may include a combination of several elements such as a prima facie indication of insolvency, a gift or transfer for nominal consideration, a family or fiduciary relationship, and one or more badges of fraud. Likewise, the extent to which this showing would trigger a burden to go forward as opposed to a burden of proof requires resolution. In any event, the complexity of the problem underlines the inappropriateness of a jury.[11]

Here, the burden was placed on the trustee for several reasons. This was, under the circumstances, the best possible synthesis of many disparate views. It is the position under Section 67(d)(2)(a) and those Utah cases construing Section 25–1–4 as opposed to Section 25–1–7. No burden shifting instruction was proposed by the trustee, and it is doubtful whether the evidence justified such an instruction. The solvency of debtor was disputed. The bank had renewed the note on several occasions and apparently was satisfied with its security at the time of the transfer. *See Givan v. Lambeth, supra.* It did not pursue the debt, notwithstanding the transfer of the home, default on the note when it matured in 1978, and sale of the corporate assets by tax authorities in 1979. Debtor's solvency may be referred from the bank's own esti-

---

10. Moreover, these corporations were savings and loan institutions, part of a regulated industry, and imbued with a "public trust."

11. With the exception of *Givan,* which involved an advisory jury, every case surveyed in this opinion was tried to the court.

mate of his credit-worthiness. There was evidence to show that the consideration was bona fide and valuable. The trustee did not contend that any confidential relation existed between debtor and his son. True, debtor continued to reside at the home, but this was consistent with the promise of support. Moreover, the deed was recorded on June 19, twelve days after the transfer. There was no collusion or secrecy. *See Road Runner Inn, Inc. v. Merrill, supra.* Under these circumstances, shifting the burden to defendants was not appropriate. No mistake of law was made in instructing the jury on the burden of proof. The motion for a new trial is accordingly denied.