KENNEDY, APPELLANT, *v.* CITY OF CLEVELAND, APPELLEE, ET AL.

(No. 47101—Decided April 23, 1984.)

*Mr. Joseph J. LoPresti* and *Mr. Paul Mancino, Jr.,* for appellant.

*Mr. John D. Maddox,* director of law, for appellee.

ANN MCMANAMON, J. Plaintiff-appellant, Janet Kennedy, seeks reversal of the trial court's dismissal of her administrative appeal. For reasons that will be discussed in this opinion, we con-

400

clude that principles of equity preclude plaintiff from pursuing an appeal in this court.

## I

Nearly a decade ago, plaintiff was suspended from the Cleveland Police Department. She was relieved of duty as a police officer when she was indicted by the United States and Cuyahoga County Grand Juries for possession of stolen property. Several items of stolen men's apparel were found in a search of plaintiff's residence, in which she resided with her husband, James Kennedy. The search was conducted by the F.B.I. and local law enforcement agencies. The stolen items of clothing were traced to the burglary of a Michigan clothing store.

Plaintiff filed motions to suppress this evidence in both federal and state courts. Both of these motions were granted and thereafter the pending criminal charges were dismissed. Plaintiff was reinstated to the police department on January 20, 1975.

On May 9, 1975, plaintiff was again suspended pending a hearing on alleged violations of departmental rules, which related to the same stolen property. (Her first suspension on this matter was based solely on the fact that she had been indicted. No charges of departmental rules violations were brought until May.)

A hearing was held before the Director of Public Safety on May 14, 1975. As a result of that hearing, plaintiff was found to be in violation of the rules as charged and was dismissed from the police force, forfeiting back pay from the date of her previous suspension. Plaintiff appealed to the civil service commission. The record indicates that plaintiff presented no evidence at that hearing. Her dismissal was affirmed by the commission.

Plaintiff then availed herself of the provisions of R.C. 124.34 and 119.12

and appealed to the court of common pleas. That court affirmed the decision of the civil service commission. On November 29, 1977, plaintiff filed a timely appeal in this court. She assigned four errors which included:

"I. The trial court committed prejudicial error when it failed to file its findings of fact and conclusions of law as timely requested by the plaintiff-appellant pursuant to Rule 52, Ohio Rules of Civil Procedure.

"II. The trial court erred when it refused to grant the plaintiff-appellant a trial de novo on her appeal."

In an opinion rendered on May 3, 1979, this court sustained both of these assigned errors. The text of that opinion indicates that the court could not determine whether plaintiff received a trial de novo because of the absence of findings of fact and conclusions of law.

"In light of the lack of any clear indication by the court as to the scope and manner in which it reviewed this matter, we conclude that its failure to issue its findings of fact and conclusions of law was prejudicial error, since we are in turn unable to review, without speculation, the basis of its judgment." *Kennedy* v. *Cleveland Civil Service Comm.* (May 3, 1979), Cuyahoga App. No. 38759, unreported, at 7.

As a consequence, this court declined to review the other assigned errors and our mandate directed:

"Judgment is reversed and remanded to the common pleas court with directions that it issue findings of fact and conclusions of law." *Id.* at 8.

The record indicates that on August 10, 1979, the trial judge issued his findings of fact and conclusions of law, which state, *inter alia:*

"1. The Court concludes that this appeal is one of law and fact pursuant to Ohio R.C. § 124.34, and that accordingly plaintiff was entitled to a trial de novo.

"2. The Court concludes that in an appeal of law and fact the appointing

authority has the burden of proof by a preponderance of the evidence upon the charges.

"3. The Court concludes that the plaintiff City of Cleveland established by a preponderance of the evidence that the decision of the Director of Public Safety properly discharged the defendant."

Although the trial court properly filed its findings and conclusions, it failed to enter a final order affirming the commission's decision.

On May 23, 1983, nearly four years after the trial court issued its findings of fact and conclusions of law, the trial court adopted a judgment entry that was prepared on the stationery of plaintiff's new counsel. That judgment entry states:

"This cause came on to be heard upon the mandate of the Court of Appeals for Cuyahoga County Case No. 38759.

"The court, having previously made findings of fact and conclusions of law in this matter it is hereby ordered, adjudged and decreed that the within action be and the same is hereby dismissed for the reasons set forth in the findings of fact and conclusions of law previously made by the court.

"IT IS SO ORDERED."

It is from this judgment that plaintiff now appeals, assigning eight errors.[1]

## II

When a trial court's judgment has been reversed and remanded solely for findings of fact and conclusions of law, it is incumbent upon the trial judge to vacate his previous judgment and re-enter the same as of the date of the filing of the findings of fact and conclusions of law. This procedure is followed to reserve to the parties their respective rights of appeal after such findings have been made. See *Keller* v. *Keller* (1967), 12 Ohio App. 2d 154 [41 O.O.2d 231];

---

[1] See Appendix.

*Weikert* v. *Weikert* (App. 1954), 68 Ohio Law Abs. 257; *Edwards* v. *Edwards* (Jan. 16, 1975), Cuyahoga App. No. 33476, unreported.

Findings of fact and conclusions of law do not constitute a final judgment. Cf. *Victor Mortgage Co.* v. *Arnoff* (C.P. 1952), 67 Ohio Law Abs. 459; see Civ. R. 52 and 54. Thus, if the trial court does not re-enter its judgment when it files these findings and conclusions, there is no final judgment. See Civ. R. 54. However, in some instances, these findings and conclusions may constitute a "decision announced" within the meaning of Civ. R. 58. That rule provides:

"Subject to the provisions of Rule 54(B), upon a general verdict of a jury, or upon a decision announced, the court shall *promptly* cause the judgment to be prepared and, the court having signed it, the clerk shall thereupon enter it. A judgment is effective only when filed with the clerk for journalization. Entry of the judgment shall not be delayed for the taxing of costs." (Emphasis added.)

In the present case, the trial court's findings of fact and conclusions of law are unambiguous; the decision of the civil service commission was affirmed. We conclude that these findings and conclusions constituted a "decision announced," and thus, according to Civ. R. 58, the trial court had an obligation to journalize its final judgment "promptly."

In ascertaining the meaning of the word "promptly," we are guided by Rule 13 of the Rules of Superintendence for the Court of Common Pleas which mandates:

"The judgment entry specified in Civil Rule 58 and in Criminal Rule 32 shall be journalized within 30 days of the verdict, decree or decision. If such entry is not prepared and presented for journalization by counsel, then it shall be prepared and journalized by the court."

This rule establishes that the trial court has the primary duty to journalize

its decision within thirty days after rendering the same. However, if the trial court does not do so, the burden rests secondarily with the parties to the action. Either party is always free to request the court, by way of motion or otherwise, to enter its judgment. If the trial court refuses upon request or motion to journalize its decision, either party may compel the court to act by filing a writ of mandamus or a writ of procedendo. See 43A Ohio Jurisprudence 2d (1973) 531, Procedendo, Sections 1, 2 and 3; *State, ex rel. Jacobs,* v. *Municipal Court* (1971), 26 Ohio App. 2d 113 [55 O.O.2d 245].

In the present case, it was not necessary for plaintiff to resort to such extraordinary remedies. The record indicates that the trial court agreed to journalize its final order when so requested by the plaintiff. However, we are mystified as to why plaintiff waited for nearly four years before she made her request for a final order. Plaintiff has offered no explanation and we have found none, though we have diligently searched the record for an excuse for such protracted inaction.

We have found no case law in Ohio that addresses such a lengthy delay in securing a journalized final order. In *Brown* v. *L. A. Wells Construction Co.* (1944), 143 Ohio St. 580 [28 O.O. 486], the trial court announced its final order on September 23, 1942. However, that order was not immediately journalized by the court. On March 12, 1943, over six months after the announced decision, the court entered a *nunc pro tunc* order effective as of September 23, 1942. The plaintiff in that action filed a notice of appeal on March 27, 1943. Thereafter, defendant filed a motion to dismiss the appeal because it was not timely filed. The Supreme Court held that the time for appeal began running after the trial court actually entered the judgment, that is, on March 12, 1943. While we agree that the court speaks only through its journal, we conclude that principles of equity may command a different disposition when the delay is so unreasonable and prolonged as to work a hardship on the other party and to be an affront to the court.

In *Richards* v. *Swift* (1976), 241 Pa. Super. 359, 361 A.2d 688, a Pennsylvania appellate court addressed a similar problem. In that case, plaintiffs sought specific performance of a contract. Trial was had but no final judgment was entered. Nineteen years after trial, defendants filed a motion *nos pros.*[2] The granting of that motion requires that (1) plaintiff must have failed to prosecute his action within a reasonable time, (2) there must be no reasonable excuse for the delay, (3) the delay must have been prejudicial to the defendant. *Id.* at 361-362. The court, at 362, held:

"Because of the length of the delay in the instant case the first condition does not warrant extensive discussion. Admittedly the plaintiffs promptly filed their complaint and saw that the matter went to trial. However, after trial their prosecutorial promptness substantially diminished. They allowed the case to lie dormant for nineteen years. This delay is unreasonable. While we agree the court must accept some degree of fault, this did not relieve plaintiffs from the duty to press on with their case. As was stated in *Waring Bros. & Co.* v. *Pa. R.R. Co.,* 176 Pa. 172, 178, 35 A. 106, 108 (1896): '[I]t is the plaintiff's duty to proceed with his cause within a reasonable time. He is the actor, and must act, or fail.' The fact that the lower court did not decide the matter after trial did not relieve the plaintiffs of this responsibility to proceed with the case. This is particularly significant when the delay could have been easily avoided and

---

[2] Pennsylvania's motion *nos pros* is similar to Ohio's motion to dismiss for failure to prosecute an action.

remedied by simply bringing the fact that a decision had not been rendered to the attention of the lower court."

In Ohio, laches has been defined as: " '[u]nreasonable delay; neglect to do a thing or to seek to enforce a right at a proper time. * * * The neglect to do what in law should have been done for an unreasonable and unexplained length of time and under circumstances permitting diligence [*sic*]. * * * Unlike a limitation, it is not a mere matter of time, but principally a question of the inequity of permitting the claim to be enforced.' " *Russell* v. *Fourth Natl. Bank* (1921), 102 Ohio St. 248, 265-266. Simply stated, the elements of laches are (1) delay or lapse of time in asserting a right, (2) absence of an excuse for such delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party. 20 Ohio Jurisprudence 2d (1956) 179, Equity, Sections 84-87; *Smith* v. *Smith* (1959), 168 Ohio St. 447, 455 [7 O.O.2d 276].

We conclude that the doctrine of laches precludes plaintiff from asserting a right to an appeal on the merits of this case since the element of delay is irrefutable. Four years intervened between the rendered decision and the journalization of the final order. Plaintiff has offered no explanation and we are hard-pressed to conceive of an excuse that would absolve her lack of diligence in securing a final order from which she could appeal. The history of this case and the present appeal would appear to demonstrate her dissatisfaction with the termination of her employment and to signify the tenacity of her belief that she is entitled to reinstatement to her former position. Since the trial court made clear its decision to affirm the dismissal of the plaintiff by the civil service commission, reinstatement could only be achieved if she secured a final order and appealed to this court. In addition, the docket shows that the trial court had filed its findings and conclu-sions in August 1979. The fact that there was no journalized final order was also apparent on the face of the docket. Long ago, plaintiff had either actual or constructive knowledge that she lacked a final order from which she could appeal.

As to the fourth element, that the delay was prejudicial to the defendant, we need simply look to the issue of back-pay should plaintiff be successful at this late date in securing a reversal and reinstatement to the police force. For every day that plaintiff allowed her cause to languish in the trial court, her potential back pay award mounted. Additionally, the availability of witnesses could potentially present a problem to the defendant should plaintiff secure a reversal and remand to the trial court.

We must add here that not every delay in issuing or securing a final order in this type of situation is amenable to the application of the doctrine of laches. However, where a plaintiff knowingly and inexcusably delays in securing journalization of a final order, and this delay is for an unreasonable length of time, all to the prejudice of defendant, the doctrine of laches may bar an appeal on the merits.

Consequently, we decline to reach the merits of plaintiff's appeal and dismiss the same as barred by equitable principles.

*Judgment accordingly.*

DAY, C.J., and PATTON, J., concur.

## APPENDIX

"I. The court committed prejudicial error in not granting to the plaintiff a trial de novo in accordance with the mandate of the court of appeals in her former appeal and in accordance with law.

"II. The court committed prejudicial error in upholding the removal of the plaintiff which was in violation of her constitutional and common law rights

when she was unconditionally reinstated to her position by the city of Cleveland which reinstatement was based upon a unilateral mistake of fact of the officials of the city of Cleveland.

"III. The court committed prejudicial error in dismissing the appeal as the city of Cleveland was equitably estopped from issuing a subsequent suspension order.

"IV. The court erred in dismissing this action as the city of Cleveland was bound by the determination of the court dismissing the criminal charges.

"V. The court committed prejudicial error in dismissing this action as the suspension was based upon rules which are broader than those permitted under the charter of the city of Cleveland for suspension or removal.

"VI. The court committed prejudicial error in upholding the removal of the plaintiff as the grounds for removal violates the privilege of the plaintiff against self-incrimination.

"VII. The court committed prejudicial error in dismissing the appeal of the plaintiff as her removal was based upon an unlawful search and seizure in violation of the Fourth Amendment."