BITONTE, Appellee,

v.

TIFFIN SAVINGS BANK et al., Appellants.

[Cite as *Bitonte v. Tiffin Savings Bank* (1989), 65 Ohio App.3d 734.]

Court of Appeals of Ohio,
Seneca County.

No. 13-88-14.

Decided Dec. 29, 1989.

*Gamble, Hartshorn, Grace, Alden & Close* and *Kenneth A. Gamble,* for appellee.

*Luper, Wolinetz, Sheriff & Neidenthal, Mark S. Miller* and *Robert J. Mann,* for appellants.

THOMAS F. BRYANT, Judge.

This is an appeal from the judgment of the Seneca County Court of Common Pleas finding plaintiff-appellee, Joseph Bitonte, to be the owner of twenty-five shares of stock in defendant-appellant, Tiffin Savings Bank, now known as First Bank–Tiffin of Ohio, and awarding appellee dividends withheld plus interest accrued.

On or about May 21, 1970, twenty-five shares of stock in the Tiffin Savings Bank were issued to Joseph Bitonte and delivered by Alfred Tonti. Joseph Bitonte asserts that he accepted the stock as a gift without restrictions or encumbrances upon the stock certificate. Patrick Tonti, son of Alfred Tonti who is now deceased, claims on behalf of Tonti Financial Services, Inc. that the stock was not meant to be given as a gift, but was to be held by Bitonte pursuant to the instructions of Tonti Financial Services, Inc. Patrick Tonti claims that the shares were to be held in case Bitonte was asked by Tonti Financial Services, Inc. to be a director of Tiffin Savings Bank.

One dividend check for $131.25 was received by Bitonte for the final quarter of 1973. This was followed by a form 1099 from the IRS for $343.75 which prompted Bitonte to have his attorney inquire into the dividend discrepancy. Even though Bitonte did not receive a satisfactory answer, he let the matter drop until 1982 when he once again received a form 1099 from the IRS. The present litigation is a result of Bitonte's receipt of the 1982 form 1099.

On July 19, 1983, appellee filed his complaint against the Tiffin Savings Bank for dividends due and owing him since 1971, except for the final quarter of 1973. A trial was held on December 2, 1987 at which time Tonti Financial Services, Inc. was joined as a defendant and allowed to assert a claim to the stock and dividends.

The trial court determined that appellee was the owner of the stock and awarded him the dividends plus interest accrued. It is from this judgment that appellant appeals, asserting three assignments of error.

█ Appellant's first assignment of error is:

"The trial court erred when it held that Joseph Bitonte was the owner of the shares of Tiffin Savings Bank."

At trial, appellee produced documents to prove his ownership of the twenty-five shares of stock. Appellee first admitted into evidence the stub from the stock certificate # 515 issued to Joseph Bitonte and received by Alfred Tonti. Next, appellee produced a copy of his unrestricted stock certificate signed by the cashier and vice president of the corporation. Appellee also presented the page from the Tiffin Savings Bank stock ledger showing that twenty-five shares were issued to Joseph Bitonte with no restrictions or encumbrances. The Tiffin Savings Bank "Records of Dividends Paid" indicate that dividends were allegedly paid to Bitonte from March 1970 through September 1987. Also admitted into evidence, were copies of form 1099s supposedly issued by the Tiffin Savings Bank to Joseph Bitonte.

"The fact that a person's name appears on the books of the corporation as an owner of its shares is not conclusive evidence of the relationship. The general rule, however, is that the appearance of a person's name upon the books of the corporation is presumptive evidence that he is the owner of shares in the corporation. In addition, the possession of a share certificate bearing the genuine signature of the secretary and president of the corporation, and the corporate seal, creates a presumption that the holder is the owner of the number of shares of the stated capital therein named. If the corporation disputes that ownership, it has the burden of proof to overcome that presumption by the production of evidence sufficient for that purpose." 12 Ohio Jurisprudence 3d (1979), Business Relationships, Section 490.

Appellee met the burden of proof of ownership as outlined above. To rebut the presumption of ownership created by appellee, appellant asserts that Alfred Tonti was not the owner of the shares and therefore could not transfer the shares.

However, the stub for stock certificate # 515 indicates that the stock was transferred from various shareholders to Bitonte and received on Bitonte's behalf by Alfred Tonti. The stock certificate was signed by the cashier and vice-president of the Tiffin Savings Bank. There is no indication in the record that Alfred Tonti ever did more than receive and transport the shares for Bitonte. The stock was transferred from various shareholders and the certificate was approved by the appropriate Tiffin Savings Bank officials.

Patrick Tonti claims that the shares belong to Tonti Financial Services and were to become the property of Bitonte only if he was needed to sit on the Board of Directors of Tiffin Savings Bank. Appellant refers us to *MacQueen v. Dollar Savings Bank Co.* (1938), 133 Ohio St. 579, 583, 11 O.O. 302, 304, 15 N.E.2d 529, 531, to support the argument that transfers on the stock books of companies are done frequently for the purpose of qualifying individuals as directors and such stockholders are not recognized in the eyes of the law as stockholders. However, the test is two parts and not one as cited by appellant. The credited stockholders "paid no consideration for the stock allotted them *and* they never received any stock certificates." (Emphasis added.) *Id.* at 583, 11 O.O. at 304, 15 N.E.2d at 531. In the case before us, while Bitonte received his stock as a gift for which he gave no consideration, he did receive a stock certificate. Based on the test in *MacQueen*, appellant's argument that the transfer was done on the books solely for the purpose of qualifying Bitonte as a director is rebutted by the additional transfer of the stock certificate. Additionally, appellant's reference to *Central Oil Emulsion Corp. v. Roesch* (1956), 103 Ohio App. 293, 3 O.O.2d 324, 139 N.E.2d 88, does not impact upon this case since the individual receiving the share of stock in *Central Oil* actually served as a member of the board of directors in a confidential and fiduciary capacity from 1935 to 1949 and knew the reason for which he had been initially given his single share of stock.

"The exhibits and testimony of the witnesses were presented to the court below who as the trier of fact had the responsibility of determining the credibility of the witnesses in relation to the circumstances of the case." *In the Matter of Cooper* (Sept. 22, 1989), Seneca App. No. 13-88-34, unreported, 1989 WL 108730. We believe that the trial court could not from the evidence and testimony presented find that the corporation overcame the presumption of ownership as demonstrated by appellee. "We will not set aside the trial court's decision 'when there is nothing in the record to show that the court manifestly disregarded the weight of the evidence or violated any principle of law * * * in arriving at its conclusions.'" *Id.*, citing *Bowlin v. Black & White Cab Co.* (1966), 7 Ohio App.2d 133, 141, 36 O.O.2d 288, 292, 219 N.E.2d 221, 226.

Appellant's first assignment of error is overruled.

█ Appellant's second assignment of error is:

"The trial court erred in finding that plaintiff's claim to ownership of the shares of stock and their resulting dividends was not barred by laches."

"In Ohio, laches has been defined as: ' "unreasonable delay; neglect to do a thing or to seek to enforce a right at a proper time. * * * The neglect to do what in law should have been done for an unreasonable and unexplained

length of time and under circumstances permitting diligence [*sic*]. * * * Unlike a limitation, it is not a mere matter of time but principally a question of the inequity of permitting the claim to be enforced." ' * * * [Citation omitted.] Simply stated, the elements of laches are (1) delay or lapse of time in asserting a right, (2) absence of an excuse for such delay, (3) knowledge, actual or constructive of the injury or wrong, and (4) prejudice to the other party. [Citations omitted.]" *Kennedy v. Cleveland* (1984), 16 Ohio App.3d 399, 403, 16 OBR 469, 472, 476 N.E.2d 683, 688.

The trial court determined that "[t]he Defendant has raised the issue of laches, but failed to present any evidence on what prejudice the Defendants were caused in this instance. There being no evidence of prejudice, it is not necessary to examine whether or not laches would have applied in this case. See *Smith v. Smith*, 168 Ohio St. 447, 7 O.O.2d 276, 156 N.E.2d 113 (1959)."

Appellant claims that it has been prejudiced because Alfred Tonti died. The stock was transferred to Joseph Bitonte in 1970. Alfred Tonti died in 1972. Appellee could not sue on the dividends until they had accumulated. Appellant's argument that it has been prejudiced by Alfred Tonti's death is without merit since Alfred Tonti died shortly after the stock was transferred and appellee was not aware that dividends were being paid until at the earliest sometime in 1974.

" 'Delay in asserting a right does not of itself constitute laches, and in order to successfully invoke the equitable doctrine of laches it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting his claim.' [Citations omitted.]" *Thirty-Four Corp. v. Sixty-Seven Corp.* (1984), 15 Ohio St.3d 350, 354, 15 OBR 472, 475, 474 N.E.2d 295, 298.

"Determination of what constitutes laches is one of those matters in which the sound judicial discretion of the court plays a relatively important part, because no universal rules can be formulated, but the question is predominately one of fact, to be resolved in each case according to its special circumstances." 66 Ohio Jurisprudence 3d (1986), Limitations and Laches, Section 222.

From the record before us, we cannot say that the court's attitude was unreasonable, arbitrary or unconscionable. See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1141–1142. Therefore, we find no abuse of discretion and overrule appellant's second assignment of error.

Appellant's third assignment of error is:

"The trial court erred in not barring appellee's claim for dividends and interest from March 31, 1971 through March 31, 1977, as those claims are barred by the statute of limitations, O.R.C. Section 2305.07."

Appellant claims that R.C. 2305.07, which provides for a six-year statute of limitations after the cause accrues, is the applicable statute in this case. In support of this assertion, appellant offers *Larwill v. Burke* (1900), 19 Ohio C.C. 449. In *Larwill*, the shareholder's stock was attached and sold and new certificates were issued to the subsequent purchaser who sold the stock to three other individuals. The shareholder in *Larwill* was informed of this action in 1881 and was told that he would not be permitted to share in any of the funds of the corporation until his rights were established by law. The claim in *Larwill* was not brought until 1896, too late to be allowed to recover under the bar of the statute of limitations.

Appellant in our case claims that *Larwill* stands for the proposition that the statute of limitations for claims on dividends or capital stock begins to run when there is a demand and refusal. Appellant further asserts that appellee made a demand and there was a subsequent refusal in 1974 when appellee's attorney inquired by letter into the discrepancy between the dividends received by appellee and the form 1099 sent by the IRS.

If we adopt appellant's argument that *Larwill* requires a demand and refusal to begin the running of the statute of limitations, we disagree with appellant's conclusion that there was an adequate demand and refusal made in this case compared with the facts in *Larwill*.

■ However, if we assume the necessity for a demand and refusal and assume that an appropriate demand and refusal was made in 1974, we do not follow appellant's assumption that the R.C. 2305.07 six-year statute of limitations for contracts not in writing is applicable. We believe that a stock certificate is evidence of a written contract between the shareholder and the corporation subject to the state and federal Constitutions, applicable statutes, corporate records, and provisions of the charter or articles of the corporation in effect at the time the corporation is created. See 12 Ohio Jurisprudence 3d (1979), Business Relationships, Section 494. The appropriate statute of limitations for a written contract as evidenced by the stock certificate in this case is fifteen years. R.C. 2305.06. Although we do not believe that an appropriate demand and refusal was made in 1974, the claim as filed in 1983 would be within the applicable fifteen-year statute of limitations.

Appellant's third assignment of error is not well taken and is overruled.

For the reasons stated above and upon the authorities cited and discussed the judgment of the Court of Common Pleas of Seneca County is affirmed.

*Judgment affirmed.*

SHAW and MILLER, JJ., concur.