OPINION *Page 2 
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Appellant, Robert L. Howell, appeals the April 28, 2008 judgment of the Columbiana County Court of Common Pleas ordering him to pay child support retroactive to August 15, 2003 to his former wife, Appellee, Betty Jane Howell. On appeal, Robert argues that: (1) the trial court abused its discretion by ordering child support retroactive to that date; (2) the trial court's order violated his due process rights; and, (3) the court erred by failing to find that Betty's August 2003 motion for child support was barred by the doctrine of laches. Upon review of the record and for the following reasons, Robert's arguments are meritless.
 {¶ 2} First, the trial court did not abuse its discretion when it ordered child support retroactive to August 15, 2003. Betty's August 15, 2003 motion for support had remained pending and it was well within the trial court's discretion to order that the support award relate back to the date Betty filed her motion. Second, the trial court did not violate Robert's due process rights. He received notice of the August 15, 2003 motion and had an opportunity to be heard on the matter. Finally, the trial court did not abuse its discretion when it rejected Robert's laches defense. The record reveals that Betty did not "sit on her rights," but rather that the court held her support motion in abeyance pending the resolution of a motion filed by Robert. Further, Robert was not materially prejudiced by the delay. Accordingly, the trial court's decision is affirmed.
 Facts {¶ 3} On December 28, 1972, Robert and Betty married. Five children were born as issue of the marriage. On October 30, 1992, Robert filed for divorce and the marriage was ultimately dissolved on August 16, 1993.
 {¶ 4} The parties initially tried several different shared parenting plans. At one point, Robert was ordered to pay child support pursuant to those arrangements. However, on October 25, 1995, the parties ultimately agreed to a "split" parenting arrangement. Under this agreement, as memorialized by the court's judgment entry, Betty was designated the residential parent of Whitney, and Robert the residential parent of Jason. At that time, the other three children were emancipated. The parties agreed, and the *Page 3 
court concurred that there would be no child support going forward. This "split" parenting arrangement remained in place for nearly eight years.
 {¶ 5} However, on August 15, 2003, Betty filed a motion for child support via the Columbiana County Child Support Enforcement Agency (CSEA). In support of her motion, Betty stated that Jason, the child who resided with Robert, had become emancipated, while the minor Whitney continued to reside with her.
 {¶ 6} A hearing on Betty's child support motion was set for September 26, 2003. However, on the day of that hearing, Robert filed a motion for modification of parental rights, in which he alleged that Whitney's interests would be best served if he were the residential parent.
 {¶ 7} On September 30, 2003, the magistrate issued an order stating:
 {¶ 8} "Plaintiff has filed a motion to modify the allocation of parental rights. Therefore, the matter of establishment of support will be held in abeyance until such time as the motion to determine parental rights is determined."
 {¶ 9} On November 20, 2003, the parties met for a status conference, and the matter was referred to mediation. On January 20, 2004, Robert moved the court for further hearing on his motion for modification of parental rights, stating: "although a successful mediation report was filed by the mediator, the parties now agree they do not wish to be bound by the mediation agreement." The matter was thus set for hearing.
 {¶ 10} However, one day prior to the hearing date, Robert withdrew his motion for further hearing, which the court granted and cancelled the hearing. Robert did not dismiss his motion for modification of parental rights at that time.
 {¶ 11} On April 23, 2004, Betty requested further hearing. A phone conference was held on May 4, 2004. On July 28, 2004, the court appointed a guardian ad litem. Presumably this was done to help determine the best interests of Whitney, in light of Robert's motion for modification of parental rights. Robert was thus ordered to deposit $500 toward payment of the guardian ad litem fees.
 {¶ 12} For the next sixteen months no action was taken on the case. Robert's September 26, 2003 motion for modification of parental rights remained pending before the court. Betty's August 15, 2003 motion for child support also remained pending before *Page 4 
the court, because it had been held in abeyance pending the resolution of Robert's motion for modification of parental rights.
 {¶ 13} Finally, on November 30, 2005, the matter was set for a phone conference. As a result of that conference, the magistrate ordered the clerk of courts to return deposits for the guardian ad litem fees. On December 28, 2005, the court filed a "Notice of Assignment," setting the matter for "Docket Call" on January 11, 2006, and noting: "Dismissal Entry Due." On January 12, 2006, Robert filed a Notice of Voluntary Dismissal of his September 2003 motion for modification of parental rights. Although this dismissal should have prompted the court to set Betty's August 15, 2003 child support motion for hearing, the court failed to do so.
 {¶ 14} Then, on August 10, 2007, Betty, through the CSEA, filed another motion for child support. A hearing was set for that support request on September 11, 2007. However, again, on the day of the hearing, Robert filed a motion for modification of parental rights, which the court set for a separate hearing. The court then proceeded to hear Betty's motion for support.
 {¶ 15} On September 20, 2007, the magistrate issued her decision on the 2007 support motion. She ordered Robert to pay child support in the amount of $400.94 per month, "effective at least as of August 10, 2007," and to obtain health insurance for Whitney. Additionally, the magistrate ordered the parties to submit briefs as to whether or not the support should be considered to be further retroactive to August 15, 2003 — the time Betty filed her original support motion — since that motion had remained pending before the court.
 {¶ 16} After receiving briefs from the parties, the magistrate issued an order on October 30, 2007, stating:
 {¶ 17} "The court does not believe this is a retroactive establishment for child support because there has been a motion pending since 2003. Neither the CSEA, who filed the motion, nor the defendant, who was the obligee, dismissed that motion. Therefore, this court will set a hearing to establish the child support effective August 2003. The court recognizes that this will create a substantial arrearage and will deal with issues concerning the payment of that arrearage at some future date. However, the court *Page 5 
needs to hear evidence as to incomes as of 2003 in order to establish the support order that should have been in effect between that time and the filing of the motion on August 10, 2007."
 {¶ 18} On December 11, 2007, Robert filed a motion to set aside the magistrate's October 30 order, because he believed Betty's 2003 support case had long since been closed. In support of this contention, he attached what he alleged to be a printout from the trial court showing the status of cases as reported to the Ohio Supreme Court.
 {¶ 19} In the meantime, Robert voluntarily dismissed his September 2007 motion for modification of parental rights.
 {¶ 20} On January 7, 2008, the trial court overruled Robert's objections to the magistrate's order. The trial court concluded that the August 2003 support motion was still pending and required a hearing. Therefore, it ordered the magistrate to determine child support effective August 2003, and to make the appropriate decision regarding payment of any arrearage that would automatically accrue.
 {¶ 21} The next day, the magistrate held a hearing and issued her resulting decision on January 23, 2008. She determined that for the period from August 15, 2003 until September 20, 2007, Robert was obligated to pay child support in the amount of $423.64 per month. As that created a substantial arrearage, she ordered Robert to pay only a portion of that, $78.60 monthly, towards the arrearage. This $78.60 was in addition to the $400.94 per month, in prospective support, that Robert was ordered to pay on September 20, 2007. On that same day, the trial court judge entered an order affirming the magistrate's decision.
 {¶ 22} On February 4, 2008, Robert filed objections to the magistrate's January 23 decision, and on March 6, 2008, he filed a brief in support thereof. Robert did not object to the magistrate's calculation of support, but rather he asserted that he should not be obligated to pay the August 2003 support obligation at all. He gave two alternative reasons in support of his contentions. First he insisted that Betty's 2003 support motion had been dismissed by the court on February 24, 2004. Alternatively, he contended that even if the 2003 support motion had remained pending, the doctrine of laches should preclude the court from ruling on it. More specifically, he alleged that Betty had failed to *Page 6 
prosecute her 2003 motion for an unreasonable amount of time, and that this delay had prejudiced him.
 {¶ 23} Also on February 4, 2008, Robert filed in this court: (1) a notice of appeal of the trial court's January 7 order; and, (2) a "motion to hold in abeyance" the appeal, pending the resolution of the objections he filed to the magistrate's January 23 decision.
 {¶ 24} On February 22, 2008, Robert filed an amended notice of appeal with this court, referencing the trial court's January 23 order. That same day, Robert moved the trial court for a stay of the execution of its January 23 order. This was denied.
 {¶ 25} Robert also moved this court for a stay of execution. This court initially continued the motion for stay, pending the determination of objections Robert had filed to the magistrate's January 23, 2008 decision.
 {¶ 26} However, on April 28, 2008, the trial court overruled Robert's objections, reaffirmed its January 7, 2008 decision and found that the magistrate properly calculated support.
 {¶ 27} With respect to Robert's motion for stay, this court ruled the following on May 13, 2008:
 {¶ 28} "1. [Robert] is ordered to continue to pay the previous order of support, including the processing fee, in the amount of $400.94 monthly;
 {¶ 29} 2. The increased child support amount and arrearage totaling $101.30 monthly is to be held in escrow pending final determination of this appeal;
 {¶ 30} 3. This order only applies to the disputed child support for the period of August 2003 until September, 2007, when the trial court modified support again."
 {¶ 31} On June 23, 2008, Robert filed a motion to clarify this court's May 13 order. In this motion he asserts that Whitney was emancipated on June 8, 2008. He also notes that this court did not state a date certain for him to cease paying the $400.94 in monthly support, or for him to commence paying the $101.30 in arrears into escrow. He thus requested that this court terminate his current child support obligation effective June 8, 2008. Betty did not respond.
 {¶ 32} On August 20, 2008, this court granted a limited remand to the trial court for the purpose of setting a date certain as to when the September 2007 prospective child *Page 7 
support obligation terminated. This court further ordered Robert to continue making payments towards the disputed arrearage, totaling $101.30 monthly, which would be held in escrow pending the outcome of the appeal.
 {¶ 33} After a hearing pursuant to the remand, the trial court determined that Whitney, the parties' only remaining minor child, was emancipated, and thus terminated Robert's current support obligation effective June 8, 2008.
 Abuse of Discretion {¶ 34} In his first assignment of error, Robert argues:
 {¶ 35} "The trial court abused its discretion by ordering retroactive child support."
 {¶ 36} Specifically, Robert takes issue with the fact that, on January 23, 2008, the trial court ordered him to pay child support for the period from August 15, 2003 until September 20, 2007.
 {¶ 37} Child support orders are reviewed under an abuse of discretion standard. Booth v. Booth (1989), 44 Ohio St.3d 142, 144,541 N.E.2d 1028. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140 (internal citations omitted).
 {¶ 38} In this case, the trial court did not abuse its discretion since it merely awarded child support retroactive to the date Betty filed her support motion. As was stated by the court in Murphy v.Murphy (1984), 13 Ohio App.3d 388, 388, 469 N.E.2d 564, paragraph two of the syllabus:
 {¶ 39} "[i]n view of the substantial time it frequently takes to dispose of motions to modify child support obligations, it is not an abuse of discretion of the trial court to order an increase in child support payments retroactive to the date of filing of the motion for modification of support."
 {¶ 40} Following the rationale in Murphy, the Ninth District upheld a retroactive child support increase, where the request had occurred over two years before the final order. Stacey v. Stacey (Dec. 20, 1995), 9th Dist. No. 2427-M. Similarly, in the context of spousal support, the Third District upheld a retroactive reduction where there was a three-year delay in ruling on the motion. Bolen v. Bolen (June 5, 1995), 3d Dist. No. No. 5-94-39 *Page 8 
(citing Murphy, supra).
 {¶ 41} Likewise, the trial court's retroactive support award in this case was proper. The court merely awarded support retroactive to the date Betty filed her motion. Contrary to Robert's assertions, the record reflects that Betty's motion was never dismissed. It was merely held in abeyance pending the resolution of Robert's motion for modification of parental rights — a motion that Robert did not dismiss until January 2006.
 {¶ 42} Admittedly, the trial court failed to set Betty's 2003 support motion for hearing when it should have, i.e., following Robert's January 2006 dismissal of his motion for modification of parental rights. It was not until after Betty and the CSEA filed a second motion for support in August, 2007 that the trial court realized the August 2003 support motion was still pending, and set a hearing for determination of support retroactive to that date. Although we do not condone this oversight, the fact remains that Betty's 2003 support motion remained properly pending before the trial court.
 {¶ 43} Robert, however, insists that Betty voluntarily dismissed her 2003 support motion in February 2004. He claims that "court records" demonstrate that Betty voluntarily dismissed her August 2003 motion for child support on February 26, 2004. However, the "court record" upon which he apparently relies is actually an uncertified, unauthenticated document purporting to show the status of cases as reported to the Ohio Supreme Court. On the trial court's actual docket, there are no journal entries for the month of February 2004, and further, nothing in the docket indicates that Betty ever voluntarily dismissed her August 2003 motion for support.
 {¶ 44} Alternately, Robert contends that the court dismissed Betty's August 2003 support motion on December 28, 2005. However, the trial court's docket does not support Robert's contention. On December 28, 2005, the trial court filed a "Notice of Assignment," setting the matter for "Docket Call" on January 11, 2006, and noting: "Dismissal Entry Due." That notice of assignment cannot be construed as dismissing Betty's motion. In fact, it was Robert who filed a dismissal of his motion shortly thereafter.
 {¶ 45} Robert also cites Meyer v. Meyer (1985), 17 Ohio St.3d 222,17 OBR 455, 478 N.E.2d 806, in support of his position that the trial court abused its discretion by ordering support retroactive to August 2003. However Meyer is inapposite. There, the *Page 9 
Ohio Supreme Court held that "a custodial parent is not entitled to reimbursement for child support from the non-custodial parent where no support order is made or requested at the time custody is awarded." Id. at 222, syllabus. By contrast, this case involves a scenario where the custodial parent, Betty, was awarded child support retroactive to the date she filed her support motion. As discussed above, a trial court may award support retroactive to the filing date. Murphy,13 Ohio App.3d at 388.
 {¶ 46} Robert further contends that the trial court should have declined to make the award of child support retroactive to the filing date, because Robert complied with the shared parenting plans in place while the support motion was pending. He cites Bahgat v. Bahgat (Mar. 31, 1998), 10th Dist. No. 97APF04-533 in support of his argument.
 {¶ 47} However, Robert's reliance on Bahgat is misplaced. InBahgat, the trial court declined to award child support retroactive to the filing date where the father complied with the shared parenting plans that were in place while the mother's support motion was pending. However, those shared parenting plans provided that the father was to furnish health insurance for the children; pay any medical or dental expenses not covered by insurance; and pay school and child care expenses. Further the plans provided that all other expenses were to be split equally between the two parents. The father was in substantial compliance with the shared parenting plans during the pendency of the mother's support motion. Under those circumstances, the Tenth District held that it was within the discretion of the trial court to decline to make the child support award retroactive to the date the mother filed her support motion Id. at 5.
 {¶ 48} By contrast, the shared parenting plan in place while Betty's 2003 support motion was pending did not order Robert to share in any of Whitney's expenses. Therefore, Bahgat is clearly distinguishable. Moreover, Bahgat stands for the proposition that a trial courtmay decline to order support retroactive to the filing date under such circumstances, not that it must decline to do so.
 {¶ 49} Thus, for the above reasons, the trial court did not abuse its discretion when it ordered the award of child support retroactive to August 15, 2003, the date Betty filed her child support motion, and Robert's first assignment of error is meritless. *Page 10 
 Due process {¶ 50} In his second assignment of error, Robert argues:
 {¶ 51} "The trial court violated the appellant's right to due process when it granted the appellee's motion for retroactive child support."
 {¶ 52} In Carr v. Carr (Aug. 11, 1999), 9th Dist. No. 2880-M, at 5, the court explained the due process requirements in this context:
 {¶ 53} "Absent some special circumstance, a trial court order modifying a child support obligation should be retroactive to the date such modification was requested. However, due process requires that the defending party receive adequate notice of the motion and the opportunity to present evidence in opposition." (Internal citations omitted.)
 {¶ 54} In the case at hand, Robert did receive notice of Betty's August 2003 motion for support. The docket indicates that Robert was properly served with this motion on August 20, 2003. In addition, Robert had the opportunity to oppose the August 2003 motion for support, when the court heard the matter on January 8, 2008. Because Robert had notice of the motion, and an opportunity to present evidence in opposition thereto, the trial court did not violate his due process rights.
 {¶ 55} Robert believes he was denied due process because Betty failed to request, in her September 2007 motion, that the support order be made retroactive to August 2003. Again, Robert's arguments here are made under the false premise that Betty's August 2003 motion had been dismissed by the court. Betty need not have requested retroactive support in her September 2007 motion, because the August 2003 motion was still properly pending. Thus, Robert's second assignment of error is meritless.
 Laches {¶ 56} In his third assignment of error, Robert argues:
 {¶ 57} "The trial court erred in failing to find that the appellee's motion for support was barred by the doctrine of laches."
 {¶ 58} This court explained the doctrine of laches and its applicable standard of review in Still v. Hayman, 153 Ohio App.3d 487,2003-Ohio-4113, 794 N.E.2d 751, at ¶ 8.
 {¶ 59} "`Laches is an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party.' Connin *Page 11 v. Bailey (1984), 15 Ohio St.3d 34, 35, 15 OBR 134, 472 N.E.2d 328, quoting Smith v. Smith (1957), 107 Ohio App. 440, 443, 8 O.O.2d 424,146 N.E.2d 454. Laches is predominantly a question of fact to be resolved according to the circumstances of each individual case and, as such, is within the sound discretion of the trial court. Bitonte v. Tiffin Sav.Bank (1989), 65 Ohio App.3d 734, 739, 585 N.E.2d 460. Therefore, we must examine whether the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140."
 {¶ 60} Robert raised the doctrine of laches as a defense in his objections to the magistrate's January 23, 2008 decision, and in his brief in support thereof. The trial court overruled Robert's objections on April 28, 2008, without analysis. However, by overruling Robert's objections and reaffirming his January 7 decision, the trial court implicitly rejected the application of the doctrine of laches.
 {¶ 61} Based on the procedural history of this case, it does not appear that the trial court's rejection of the laches defense was unreasonable, arbitrary, or unconscionable. Laches involves two elements: (1) an "omission to assert a right for an unreasonable and unexplained length of time;" (2) "under circumstances prejudicial to the adverse party." Connin, 15 Ohio St.3d at 35. Under the second element "it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting his claim." Id. at 35-36 (emphasis added).
 {¶ 62} Here, Betty did not fail to assert her rights for an unreasonable and unexplained length of time. The trial court held Betty's August 2003 support motion in abeyance for several years, pending the resolution of Robert's September 2003 motion for modification of parental rights. Robert did not dismiss his motion until January 2006. Thus, if anything, Robert's failure to prosecute his motion actually caused the delay.
 {¶ 63} Further, Robert failed to show how he was materially prejudiced by the delay. As Betty points out, Robert may even have benefited. This is so because Robert presumably earned interest on the money he should have been paying to support his daughter during that time. The trial court's rejection of Robert's laches defense is reasonable, based on the circumstances of this case. Thus, Robert's third assignment of *Page 12 
error is also meritless.
 Conclusion {¶ 64} The trial court did not abuse its discretion by ordering child support retroactive to August 2003, because that was the date Betty filed her motion for support. Further, the retroactive support award did not violate Robert's due process rights because he had notice of the support motion, and an opportunity to present evidence in opposition. Finally, the trial court did not abuse its discretion by failing to find that Betty's August 2003 support motion was barred by laches, since Betty did not sit on her rights for an unreasonable or unexplained length of time and Robert was not materially prejudiced. Accordingly, all of Robert's assignments of error are meritless and the judgment of the trial court is hereby affirmed.
Donofrio, J., concurs.
 Waite, J., concurs. *Page 1