[Cite as *Carpenter v. Carpenter*, 2010-Ohio-6601.]

STATE OF OHIO, NOBLE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| ANGELA SUE CARPENTER, | ) | |
| | ) | CASE NO. 09 NO 367 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| DARWIN K. CARPENTER, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:        Civil Appeal from Common Pleas
Court, Case No. 204-0154.

JUDGMENT:        Affirmed in Part and Modified in Part.

APPEARANCES:
For Plaintiff-Appellee:        Attorney Charles C. Postlewaite
3040 Riverside Drive, Suite 122
Columbus, OH 43221

For Defendant-Appellant:        Attorney Melissa M. Wilson
Frank A. McClure & Associates
1009 Steubenville Avenue
Cambridge, OH 43725

JUDGES:
Hon. Mary DeGenaro
Hon. Joseph J. Vukovich
Hon. Gene Donofrio

Dated: December 28, 2010

DeGenaro, J.

{¶1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs and their oral arguments before this court. Defendant-Appellant, Darwin K. Carpenter, timely appeals the decision of the Noble County Court of Common Pleas modifying his child support obligation to his former wife, Appellee, Angela Sue Carpenter. Darwin argues that the trial court set an incorrect date for the emancipation of one of the children as well as the date the child support modification was to take effect. Darwin also argues that the trial court erred in calculating the modified child support award by failing to deduct cattle farming losses from his gross income as well as failing to give him credit for child care and health care costs.

{¶2} Upon review, the trial court's treatment of the beef cattle losses and the purported child and health care costs was proper. Thus, this portion of the trial court's calculation of child support is affirmed. However, the trial court did err in setting the effective dates for both modifications. The administrative child support review did not conflict with this court's jurisdiction over the previous appeal from the decree since the amount of child support was not an issue. Pursuant to R.C. 3119.71(B), the trial court should have used March 1, 2008, the first day of the month following the date CSEA began its administrative review, as the effective date for the first modification. And, the record is clear regarding Kyla's emancipation. Accordingly, the trial court's judgment is affirmed in part and modified in part to reflect the effective dates to March 1, 2008 for the first modification, and May 25, 2008 for the second modification to reflect the date of Kyla's emancipation.

**Facts and Procedural History**

{¶3} Angela and Darwin were married in 1987 and four children were born as issue of the marriage. In December 2004, Angela filed a divorce complaint in the Noble County Court of Common Pleas, and a divorce decree was issued on August 17, 2007. Among other things, Darwin was designated the residential parent of Dalton, and Angela the residential parent of Dylan, Dallas and Kyla. Darwin was ordered to pay $1,094.17 per month plus processing fee in child support to Angela. This is the same amount of

monthly support that Darwin had been paying during the pendency of the proceedings, beginning on January 15, 2005. Notably, the amount of support was not disputed in the trial court nor litigated at trial. Darwin filed an appeal raising several challenges to the divorce decree, not including child support issues, with this court affirming the trial court on all issues except for the allocation of the dependency exemptions for federal income tax purposes. *Carpenter v. Carpenter*, 7th Dist. No. 07NO344, 2009-Ohio-1199.

{¶4} While the appeal was pending before this court, on January 8, 2008, Darwin filed a request for an administrative child support modification with the Noble County Child Support Enforcement Agency. CSEA issued an administrative adjustment recommendation on February 27, 2008 increasing Darwin's monthly child support obligation from $1,094.17 to $1,410.37. On March 3, 2008, Darwin timely objected to CSEA's recommendation and requested a court hearing, which operated as a stay of the adjusted child support obligation, and thus Darwin continued to pay support pursuant to the divorce decree.

{¶5} In the meantime, on April 22, 2008, well before the hearing on the February 2008 administrative adjustment recommendation took place, CSEA issued a separate notice of termination of support because one of the children had become emancipated. This notice stated that child support for Kyla Carpenter should terminate effective May 24, 2008 because she turned 18 on March 23, 2008 and graduated from high school on May 24, 2008. Darwin's total support obligation was reduced by one third, pursuant to R.C. 3119.89(B). In making this reduction, CSEA used the monthly support amount from the divorce decree, reducing Darwin's monthly support obligation to $729.46. Neither party objected to that order and the trial court trial court ultimately approved the termination in a May 21, 2008 judgment entry.

{¶6} The hearing on Darwin's objection to the February 2008 CSEA recommended adjustment was not heard by the trial court until November 10, 2009. Both parties testified and presented exhibits relating to their finances. Both parties seemed to agree that CSEA erroneously credited Darwin with over $20,000.00 in self-employment income, where there was no such evidence in the record. Also at issue was whether

Darwin's losses from his farming operation should be deducted from his gross income, and whether Darwin should be allowed to claim certain alleged child care and health insurance expenses. On November 24, 2009, the trial court issued a judgment entry which made two separate child support modifications: one effective March 16, 2009, and the other effective June 1, 2009.

{¶7}   As an initial matter, Angela contends the trial court only had jurisdiction to review child support from the period March 1, 2008 to May 24, 2008, since Darwin did not object to CSEA's notice of termination, which took effect on May 25, 2008. This argument is meritless.

{¶8}   The February 27, 2008 administrative adjustment recommendation involved Darwin's total monthly child support obligation for all three children, requiring CSEA to determine the parties' gross income, and relevant deductions and credits. CSEA determined that Darwin's gross income had increased, which led to a recommended increase in monthly support. By contrast, the May 24, 2008 termination was due solely to Kyla's emancipation, which reduced the total amount of monthly support by one-third. Pursuant to R.C. 3119.89(B), this change did not require CSEA to determine the parties' respective gross incomes. Contrary to Angela's contentions, the fact that Darwin failed to object to the notice of termination does not affect the trial court's ability to review and modify the amount of child support after May 24, 2008. Darwin does not, and did not, dispute Kyla's emancipation, therefore, there was no need for him to object to that notice. Rather, Darwin took issue with CSEA's calculation of his gross income.

## Standard of Review

{¶9}   All of Darwin's assignments of error involve the trial court's determination of his child support obligation. "It is well established that a trial court's decision regarding child support obligations falls within the discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion." *Pauly v. Pauly* (1997), 80 Ohio St.3d 386, 390, 686 N.E.2d 1108, citing *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. The term "abuse of discretion" implies more than an error of judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable.

*Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. Nevertheless, a trial court's discretion is not unfettered and the mandatory statutory child-support requirements must be followed in all material respects. *Sapinsley v. Sapinsley*, 171 Ohio App.3d 74, 2007-Ohio-1320, 869 N.E.2d 702, at ¶8; see, also, *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 601 N.E.2d 496, paragraph two of the syllabus.

**Losses from Cattle Operation**

{¶10}  Darwin's four assignments of error will be taken out of order for  analysis purposes, the second of which asserts:

{¶11}  "The trial court abused its discretion by determining that Appellant's income is determined by his adjusted gross income increased by his losses shown for his beef cattle operation."

{¶12}  The trial court held with respect to cattle operation expenses as follows:

{¶13}  "Defendant is primarily a wage earner, but also claims to have self generated income as a raiser of beef cattle.  Self generated income means, among other things not applicable in this case, proprietorship of a business. R.C. 3119.01(B)(13). Black's Law Dictionary defines business as 'employment, occupation, profession, commercial activity engaged in for gain or livelihood.'  A review of Defendant's tax returns for the last four calendar years reveals the following concerning his beef cattle raising business: (1) average annual gross receipts from sales were $3283.00, while average annual deductions were $21,629.00; (2) for the 4 year period deductions exceeded receipts by $73,383.00; and (3) for the 4 year period, deductions were more than 6 times receipts.

{¶14}  "The Court finds that Defendant's beef cattle operation is not engaged for gain or livelihood, is not a business, and this is not the case involving self generated income. Rather, Defendant's gross income for child support calculation purposes consists of his adjusted gross income increased by the losses shown for his beef cattle operation. See tax returns for 2005, 2006, 2007, and 2008."

{¶15}  Darwin has mischaracterized how the trial court treated these expenses. The trial court did not increase Darwin's gross income by the amount of expenses he

incurred in the cattle operations. Rather, the trial court did not permit Darwin to reduce his gross income by the amount of those expenses because the cattle operations were not engaged in for income generating purposes as contemplated by the child support guidelines. "[T]he purposes underlying the Internal Revenue Code and the child support guidelines are vastly different. The tax code permits or denies deduction from gross income based on myriad economic and social policy concerns which have no bearing on child support. The child support guidelines in contrast are concerned solely with determining how much money is actually available for child support purposes." *Staffrey v. Smith*, 7th Dist. No. 09-MA-107, 2010-Ohio-1296, at ¶27, quoting, *Helfrich v. Helfrich* (Sept. 17, 1996), 10th Dist. No. 95APF12-1599.

**{¶16}** For example, in *Dressler v. Dressler,* 12th Dist. No. CA2003-05-062, 2004-Ohio-2072, the trial court did not abuse its discretion in determining that the father's operation of a boat storage facility was hobby rather than business, and accordingly declining to deduct losses attributable to that business from the father's income when calculating support, where the father testified that the boat storage facility was consistently unprofitable and was not his primary source of income. Id. at ¶15.

**{¶17}** Similarly here, Darwin failed to demonstrate that the cattle operation was anything more than a hobby. He failed to make a profit from 2005-2008. Further tax returns in the record show losses of $13,445 in 2001, $20,280 in 2002, and $16,646 in 2003. When asked during the divorce trial in 2006 whether he made a profit from the farm, Darwin replied "No, not really." Further, according to Darwin, his son Dalton raises pigs for the fair, and Dalton's daily chores include feeding the cattle after school, which would support the determination that the farming operation was more hobby than business. Moreover, during the November 10, 2009 hearing Darwin was vague about the extent of his cattle business. Although Darwin claimed to have made a profit on the farm sometime in the past, he could point to no specific year.

**{¶18}** It was within the trial court's discretion to choose not to deduct the losses from the farming operation from Darwin's gross income. As the court noted: "Defendant's operation of his beef cattle activity has the net effect of artificially lowering his income for

child support purposes if considered a 'business.'" Accordingly, Darwin's second assignment of error is meritless.

### Child Care and Health Insurance Costs

{¶19} Darwin asserts in his third assignment of error:

{¶20} "The trial court abused its discretion by determining that Appellant should not receive credit for child care expenses when determining the child support calculation."

{¶21} A parent is entitled to a credit for health insurance costs and childcare expenses incurred by the parent when calculating child support. R.C. 3119.023. The final divorce decree required Darwin to maintain secondary health insurance coverage for the children. It also required Darwin to pay two-thirds of any work-related babysitting or child care expenses.

{¶22} With regard to the health insurance costs, Darwin testified that he has a $10/hour fringe package for insurance through his union. He argues he should receive a credit for child support calculation purposes of approximately $5.00 per hour for each hour that he works, inferring his pay would increase by that amount if he was not required to provide health insurance for the children. However, Darwin provided no proof of this, and in fact, his paystubs do not reflect any premium deductions. Further, Darwin testified that if he works 1,000 hours, he is provided with health insurance free of charge, and that he had never worked fewer than 1,000 hours. Thus, the trial court's determination not to give Darwin credit against his child support obligation for purported health insurance costs was reasonable, and not an abuse of discretion.

{¶23} With regard to the child care costs, Darwin testified that his understanding of child care costs was quite broad, meaning "anything that you give to the child." This is contrary to what is permitted pursuant to R.C. 3119.023, which only allows for child care expenses that are work, employment-training, or education-related, as approved by the court or agency. Moreover, Darwin, was unsure about how much he had spent on child care, and failed to present any verification in the form of receipts, or account statements, as Angela did for her child care costs. There was some testimony that Darwin paid Angela a sum in 2008, however, it appears that part of this payment was for money owed

for child care expenses pursuant to the trial court's earlier award in 2006. Darwin also claimed to have some additional child care payments for his son Dalton in 2008, however, he admitted that Dalton was fifteen years old at that time and was unable to explain the need for work-related child care for Dalton.

{¶24} It was within the trial court's discretion to choose not to credit any amount for child care expenses against Darwin's child support obligation. The testimony indicates that while some funds were paid to Angela for child care pursuant to an earlier settlement, Darwin was not incurring any current child care costs for which he should have been credited. Accordingly, Darwin's third assignment of error is meritless.

### Effective Date of First Modification

{¶25} Darwin asserts in his fourth assignment of error:

{¶26} "The trial court abused its discretion by failing to make the child support award retroactive to the date Appellant filed the motion to modify support."

{¶27} Generally, a trial court should make an order altering a child support retroactive to the date the party filed the motion to modify. " 'In view of the substantial time it frequently takes to dispose of motions to modify child support obligations, it is not an abuse of discretion of the trial court to order an increase in child support payments retroactive to the date of filing of the motion for modification of support.'" *Howell v. Howell,* 7th Dist. No. 08 CO 4, 2008-Ohio-6639, at ¶39, quoting *Murphy*, supra, at paragraph two of the syllabus. See, also, *Sheridan v. Sheridan*, 6th Dist. No. WM-04-010, 2005-Ohio-6007, at ¶40 (citing cases).

{¶28} However, the effective date of a modification which arose from an administrative review is governed by statute:

{¶29} "If the obligor or obligee requests a court hearing on the revised child support amount [determined by CSEA] and the court, after conducting a hearing, modifies the court child support amount under the order, the modification shall relate back to the first day of the month following the date on which the review of the court child support order began pursuant to division (A) of section 3119.60 of the Revised Code." R.C. 3119.71(B).

{¶30} R.C. 3119.60(A) requires CSEA to establish a date certain for the commencement of formal review of child support. Here, CSEA specified this date as February 27, 2008. Thus, pursuant to R.C. 3119.71(B), the trial court should have made the modification retroactive to March 1, 2008, the first day of the month following the date CSEA commenced its administrative review. See, e.g., *Cruz v. Kerr*, 9th Dist. Nos. 08CA009425, 08CA009492, 2009-Ohio-2187, at ¶11 (applying R.C. 3119.71 to conclude the effective date of a modified child support order was the first day of the month following the date CSEA's formal review began).

{¶31} Here, the trial court did not give a reason for using March 16, 2009 as the effective date for the first modification, other than parenthetically noting it coincides with the release of this court's opinion in the first appeal. Although an appeal from the final decree was pending at that time, the amount of child support ordered was not at issue, and thus the administrative modification proceedings did not conflict with this court's jurisdiction. Therefore, under R.C. 3119.71(B) the trial court should have made the first modification effective March 1, 2008. Thus, Darwin's fourth assignment of error is meritorious in part.

### Effective Date of Second Modification (Kyla's Emancipation)

{¶32} Finally, in his first assignment of error, Darwin asserts:

{¶33} "The trial court abused its discretion by determining that Kyla Carpenter emancipated on June 1, 2009."

{¶34} Both parties testified that Kyla became emancipated when she graduated from high school in the spring of 2008. CSEA determined in a notice issued on April 22, 2008, that Kyla turned 18 years old on March 23, 2008, and would graduate from high school on May 24, 2008. CSEA accordingly reduced Darwin's child support obligation for three children as stated in the decree by one-third, to reach a total monthly obligation of $729.46 plus processing fee for the remaining two children. In a May 21, 2008 judgment entry, the trial court adopted CSEA's recommendation to reduce the support due to Kyla's emancipation, effective May 25, 2008. Thus, the trial court's determination in the November 24, 2009 entry that Kyla became emancipated on June 1, 2009 is unsupported

by the record and inconsistent with the court's previous orders. Angela argues that this somehow constitutes harmless error, but the use of a date over a year after Kyla's actual emancipation clearly prejudices Darwin. Therefore Darwin's first assignment of error is meritorious.

**{¶35}** The trial court did not abuse its discretion with regard to its treatment of the losses from the beef cattle operation, nor by failing to give Darwin credit for his purported child care expenses and health care costs. However, Darwin's arguments regarding the effective dates used for the modifications are meritorious. The trial court should not have used March 16, 2009, as the effective date of the first modification. Rather, pursuant to R.C. 3119.71(B), the proper effective date was March 1, 2008. Further, the record is clear that Kyla became emancipated on May 25, 2008. Accordingly, the judgment of the trial court is affirmed in part and modified in part to reflect the effective date of the first modification increasing Darwin's child support obligation to $1,410.37 per month plus processing fee to March 1, 2008, and to reflect the effective date of Kyla's emancipation for the second modification of Darwin's child support obligation to May 25, 2008.

Vukovich, P.J., concurs.

Donofrio, J., concurs.